# CHARLESTON.

EDGAR C. LAWSON *v.* WADE DYE

(No. 5911)

Submitted November 20, 1928.   Decided December 4, 1928.

*Hogg & Hogg,* for plaintiff in error.

*B. H. Blagg* and *Somerville & Somerville,* for defendant in error.

LIVELY, PRESIDENT:

Lawson's one-ton Ford truck collided with Dye's Studebaker touring car and Lawson sued for damages to his truck, which as shown by the bill for repairs, amounted to a little over $132.00. The negligence charged is that Farnsworth, the driver of Dye's car, was running at an excessive speed, and that when the two cars were approaching each other at a short distance apart, he turned his car to the left, instead of turning to the right, thereby negligently bringing about the collision. The jury found for defendant and judgment was entered accordingly from which Lawson prosecutes this writ of error.

Lawson's father started from his farm in his one-ton Ford truck to drive down the public road to⸍ Point Pleasant, on January 10, 1925, accompanied by his wife. This public road was about 26 feet wide and had been recently gravelled to the corporate limits of the city of Point Pleasant, thence hard surfaced through the city. His evidence is that he drove on the right-hand side of the road going down and had reached a point several hundred feet from the end of the gravelled road when defendant's Studebaker car, operated by Farnsworth as a taxi, with four passengers came up the road making an unusual noise and running, as he judged, at 45 or 50 miles per hour, swinging to his left as he left the hard surface, then to his right, and when he reached Lawson's truck instead of swinging to the right, again went to the left striking plaintiff's car. Plaintiff's truck was turned around

and ran into the bank on the left side of the road going up, climbing a small bank, running over a stump, and into the corner of the porch of a house. The Studebaker car was badly damaged and the physical marks on it showed an impact on the right side between the radiator and door. The damage to plaintiff's truck was at its front end. Defendant's driver and one of his passengers (foreman of a construction crew in the vicinity) tell a quite different story. They say they were not traveling over 20 or 25 miles an hour, and before they left the hard surface observed plaintiff's truck in the distance approaching on the left side of the road coming down, which was the side generally used and had become packed; that they drove on the right side going up, checking the speed until they were going perhaps ten miles per hour, but plaintiff still kept on his wrong side in the packed portion and made no indication that he would turn out on to his proper side, until there was a distance of 25 feet between the cars approaching to a head-on collision, when defendant's driver in order to avoid collision turned to the left out into the center of the road, and plaintiff then immediately turned his car to the right and struck defendant's car on its right side causing it to skid, leave the road and run into the porch, the steering gear having become damaged by the impact. There is the usual conflict in the evidence as to the speed of the two cars. One witness says he was following the Studebaker car and kept up with it at 20 miles per hour. Some of plaintiff's witnesses say they heard the Studebaker car running and from the sound it made they judged it was going at a high rate of speed. One witness for defendant says he saw Lawson driving on the left of the road going down, just a little time before he heard the impact. A good sized crowd quickly gathered and the tracks of the cars were traced in the gravel, and the preponderance of the evidence as to the tracks corroborate the evidence of defendant's driver and passenger as to the relative position of the cars. Several witnesses also said that Mrs. Lawson there admitted that they were driving on the wrong side claiming that they, the Lawsons, had a right to drive on that side so long as another car was not approaching. She denied that she so stated. The

preponderance of the evidence, and the physical facts are rather corroborative of defendant's evidence that the cars approached each other on a straight road for several hundred feet, defendant on his right side and plaintiff on his wrong side, until they neared each other in dangerous proximity, where both attempted to avoid a head-on collision with the result as detailed. The jury was taken to inspect the marks on the parts of the cars caused by the impact.

The errors which Lawson says should reverse the judgment and set aside verdict are in giving and refusing instructions and admitting and rejecting evidence.

Plaintiff's instruction 2, refused, would have told the jury the maximum rate of speed and prescribed by law for the operation of defendant's car on a public road in the country; and would have told them that if they believed from the evidence that defendant operated his car at a speed in excess of 35 miles per hour at the time of the accident, they could, from this fact together with all other facts, presume that defendant was negligent, and if they believed such negligence was the proximate cause of the injury to plaintiff's truck, "the driver of said truck being in the exercise of ordinary care", they should find for plaintiff. The substance of this instruction was given in plaintiff's instruction 4. Instructions need not be repeatedly given. Said instruction No. 2, refused, is subject to the criticism of tendency to mislead, for it says the "driver of plaintiff's truck being in the exercise of ordinary care." The jury may have understood (if the instruction had been given) that the court meant to tell them that plaintiff's driver was exercising ordinary care at the time of the accident.

Plaintiff's instruction 3, refused, would have told the jury that the operator of a car upon meeting another car coming from the opposite direction, should turn to the right of the center of the road, and if they believed that defendant's driver did not do so, and his failure to do so was the proximate cause of the collision, then the jury should find for plaintiff, if they further believed that plaintiff's driver was exercising ordinary care. This instruction ignores the defense that defendant's driver was on the right of the road

and could not turn further to the right, and in order to avoid a head-on collision took the only way open to avoid it. There are situations which justify a turn to the left, instead of to the right, where a collision would result if it was not done. So, a failure to turn to the right is not always negligence, depending upon the situation. This instruction would have told the jury that if defendant's car did not turn to the right upon meeting plaintiff's car, and plaintiff was operating his car with ordinary care, then they should find for plaintiff. The instruction was properly refused. *Swiger* v. *Runnion*, 90 W. Va. 322. It singles out the fact that defendant's driver did not turn to the right of the center of the road, and therefore if plaintiff's driver was in the exercise of ordinary care, the jury should find for plaintiff. There was other evidence which strongly indicated that plaintiff's driver brought about the situation which caused defendant's driver to attempt to pass on the left to avoid a head-on collision; and it has been repeatedly held that it is improper for a court, in an instruction, to point out certain facts and tell the jury it should find for either party on such facts when there are other facts or evidence in the case bearing on the subject. 7 Ency. Digest Virginia & West Virginia, p. 723; *Woodell* v. *W. Va. Improvement Co.,* 38 W. Va. 23, 17 S. E. 386.

Plaintiff's instruction No. 5, refused, is practically the same as No. 3. Plaintiff's instruction No. 6, refused, would have told the jury that a person operating a motor car on the public road should exercise a higher degree of care than one using ordinary or less dangerous instruments of travel; and should use such care in speed, warnings of approach, and the management of the car as will enable him to anticipate and avoid collision, and therefore, if the jury believed defendant's driver did not exercise such care in speed, and failed to give warning of his approach, and failed to so manage his car as to anticipate and avoid the collision which the nature of the machine he was driving and the locality might suggest would likely occur in the absence of such precautions, then he was negligent, and if the collision occurred by reason of such negligence as the proximate cause, then they should

find for plaintiff, the "jury believing that plaintiff's driver was in the exercise of ordinary care." This instruction is entirely too general. The specific charges of negligence in the declaration are excessive speed and failure to turn to the right of the center of the road in approaching plaintiff's truck moving in an opposite direction. The failure of defendant's driver to give warning of his approach is not charged as negligence. Defendant's driver and his passenger both say that upon approaching the truck which was on the wrong side of the road, he sounded his horn for a clear passage where he had the right to go; plaintiff says he did not do so, or at least he did not hear it. But there was no necessity for warning of approach, for both drivers saw the other's car approaching for several hundred yards before the collision occurred, and plaintiff's driver says he heard defendant's car coming before it came into view. According to his evidence it was making a terrible noise. What necessity for warning of its approach existed? And why should the jury be told that a failure to warn of approach constituted negligence on which plaintiff should recover? We think there was no error in refusing this instruction as propounded. The principle of law embodied in plaintiff's instruction No. 7, refused, is contained in his instruction No. 8, given, which is that if the jury believed that defendant's car was driving at a speed in excess of 35 miles per hour and by reason of such speed the collision was proximately caused, then plaintiff was entitled to recover even though they might believe from the evidence that plaintiff's driver was on the wrong side of the center of the road, if they further believed that defendant's driver could have avoided the collision if he had not been going at the excessive speed. Plaintiff's instruction No. 9, given, told the jury if defendant's driver did not keep a reasonable lookout and the collision was the result of such failure as the proximate cause, then they should find for plaintiff, if they believed that plaintiff's driver was exercising ordinary care. There was no reversible error in giving or refusing these instructions.

The case presents no extraordinary difficulties. Plaintiff's case is based on the assumption that he was travelling on his

side of the road, and that defendant left his (defendant's) side of the road, suddenly swerved to his left, and struck plaintiff's truck; and the excessive speed of defendant, and his failure to turn to the right constituted the negligent acts on which recovery is sought. Defendant says that plaintiff by travelling on the wrong side of the road and holding it until there was imminent danger of a head-on collision, caused defendant to turn out to the left to avoid the danger (there being no other way to avoid it) when plaintiff immediately did likewise and struck the side of his car driving it off the road and into the pillar of the porch of a house nearby. There was evidence to support both these contentions, and as we have before observed, the jury was fully justified in finding for defendant under the evidence and physical facts.

Defendant's instructions Nos. 2, 3, 4 and 5, given over objection of plaintiff, are to the effect that if the jury believed from the evidence that Lawson was driving on the wrong side of the road, and continued to do so until the driver of defendant's car had good cause to believe that he would be struck unless he turned to the left, and that he did so in order to avoid a collision, and such act was one which a prudent and reasonable person would have done under the circumstances, then it was not his negligence alone which caused the damage, and they should find for defendant. It is the law based on reason that where a person driving on the right side of the road is compelled to turn to the left in order to avoid a head-on collision with another car which is violating the law of the road, he is not negligent in so doing, where he acts as a prudent person would have done under similar circumstances. *Skene* v. *Graham*, 114 Me. 229; *Shupe* v. *Rodolph*, 185 Cal. 371. We perceive no error in defendant's instructions.

The next error relates to introduction of evidence. Defendant's driver when on the stand stated that he did not travel on any part of his journey more than 30 miles an hour, and was asked why he did not do so; he replied that when he took the car out of the garage, the owner gave orders not to drive it over 20 or 25 miles an hour. Plaintiff moved to strike out the answer as based on hearsay, and it is here argued that

it was wholly immaterial to the issue. The witness had explained that the car had been completely overhauled and tightened up the day before, and fast driving would injure the car until it had been used and loosened up. We think it was competent for the witness to tell what instructions he had received as to the speed he should make in driving a car in that condition. We do not perceive that plaintiff was prejudiced. Moreover, defendant's counsel announced, when plaintiff's counsel objected to these instructions, that the answer of the witness as to instructions from the owner could be stricken out.

Next error is refusal to permit extended cross-examination of witness Morrison, who had overhauled defendant's car, as to the size of the brake lining he put in. He answered that he did not remember the width. The court then inquired of counsel what his object was, and was answered that it was one of the issues in the case, whereupon the court replied that the issues under the declaration did not concern the condition of the car, and besides the witness had already stated how the brakes were made. No further question was asked, and, of course, the record does not show what the evidence would have been. The witness had already stated he did not remember the width. Error does not affirmatively appear. On cross-examination this witness had told how the brakes were made and fitted on, and the jury afterwards inspected the car. Error must affirmatively appear, it cannot be left to conjecture.

The next error alleged is that the court permitted defendant Dye to say from his acquaintance with his car and its make, that the sound of its running could not be heard, in his opinion, a distance of twenty to twenty-two hundred feet. Plaintiff had said that he heard the car making a terrible noise that distance or more before it came in view. Dye's evidence tended to contradict plaintiff's evidence. It is argued that Dye's evidence was speculative and amounted to an opinion only, and he had not qualified as an expert. We think it is sufficiently shown that the witness was familiar with the sound made by his cars while in operation, and was

502

proper to rebut the evidence of plaintiff. It would have little effect, one way or the other, on the issue of negligence.

The next assignment is that Dye was permitted to estimate the damage done to his car, and it is here argued that such evidence was, in effect, a set-off which could not be supported without a plea of set-off. It was shown in evidence the extent of the damages to the car, that the right front wheel had been mashed, the axle bent, the steering gear ruined, and other parts damaged, all proper as bearing upon the force with which it was struck. The injury to the car was a physical fact which spoke louder than words. While it was immaterial to show the costs of repairing, we cannot see reversible error because it was shown.

The last error is refusal to allow Mrs. Lawson, in rebuttal, to testify that her husband was driving on his right side of the road when the accident occurred, and that defendant's car suddenly swerved to its left and collided with the truck. This was evidence in chief about which she had already testified and was properly refused on rebuttal.

The judgment will be affirmed.

*Affirmed.*