ASBURY WEBB, *Administrator, v.* O. F. BATTEN

(No. 8289)

Submitted April 14, 1936.   Decided June 20, 1936.

HATCHER, PRESIDENT, and KENNA, JUDGE, dissenting.

*Robinson & Stump* and *Harper & Baker,* for plaintiff in error.

*S. P. Bell* and *Grover F. Hedges,* for defendant in error.

LITZ, JUDGE:

Defendant, O. F. Batten, is aggrieved by a judgment of the circuit court of Roane County entered upon a verdict of $7,500.00 against him in favor of plaintiff, Asbury Webb, as administrator of the estate of J. D. McGraw,

deceased, for alleged wrongful death of the decedent.

McGraw died from injuries sustained October 18, 1934, in a collision between a one and one-half ton Ford motor truck (on which he was riding), owned and operated by Herbert Nichols, and a three-ton International truck, belonging to and driven by defendant, on State Route No. 5 in Roane County along a strip of road two miles in length and eighteen feet wide which was then being resurfaced with gravel and tar. The Ford truck was equipped with a flat or platform bed and closed cab. Two young women were riding in the cab with Herbert Nichols, the driver. His father, William Nichols, was seated on the left side of the truck bed with his feet on the running board and holding to the cab. McGraw occupied a similar position on the right side of the bed. The north half of the road under repair had been closed to traffic and one-way travel established over the south half by stationing a flagman at each end of the route and maintaining a warning sign: "Road under construction. Travel at your risk." The gravel and tar had been spread throughout the north strip and a portion thereof rolled for travel. No one appearing to direct traffic, the Ford truck, traveling east three or four hundred feet behind an automobile, entered the one-way course at the west end thereof about 5 P. M. It seems that the flagman, unobserved by the truck driver, was, at the time, engaged in repairing a temporary shelter nearby. On its way east, the Ford met and passed four or five cars which turned right onto the improved side of the road. Later, it encountered the International truck which had been permitted to enter by the flagman at the east end of the lane of traffic. The driver of each truck saw the other truck approaching at a distance of from 250 to 600 feet. The two trucks continued to move toward each other, over the south side of the road, until they were from 35 to 50 feet apart when both trucks suddenly turned onto the new strip of road, which had been previously rolled, and collided; the front of the International truck striking the right fender and running

board of the Ford truck and crushing the legs of the decedent.

Defendant contends that the evidence does not warrant a finding of negligence against him, and that the plaintiff was guilty of primary negligence as a matter of law. He also assigns error to the rulings of the trial court in the granting and refusal of instructions.

The contention that defendant is not chargeable with actionable negligence is based upon the fact that he had been permitted by the flagman to enter the traveled passage, and was therefore entitled to the right of way. He insists that he was justified in adhering to the prescribed course on the theory that Nichols could have driven on the berm to his right, and that he hesitated to go upon the new road because a flagman riding with him had called attention to the practice, complained of by the road contractors, of automobiles traveling over the new strip of road, before it had been opened to traffic. A motorist may not, merely because he is entitled to the right of way, ignore necessary precautions for the safety of himself and others. " * * * the right of way does not enable one, * * * to proceed without regard to circumstances, conditions, or consequences, but, notwithstanding such right, one must exercise due care to prevent injury to himself and others and to avoid a collision with a driver who may be proceeding on the wrong side of the road." 1 Blashfield, Cyc. of Automobile Law & Practice, section 649. "Though one is given the right of way by a regulation, it remains his duty to exercise reasonable care to avoid collisions with other vehicles." 3-4 Huddy, Ency. Automobile Law, 278. The same principle is announced in *Burdette* v. *Henson,* 96 W. Va. 31, 122 S. E. 356, 37 A. L. R. 489, and *Jones* v. *Cook,* 96 W. Va. 60, 123 S. E. 407. Whether defendant was justified under the circumstances in insisting upon the right of way and assuming that the Ford truck would turn from the traveled lane to the berm before an emergency arose was properly submitted to the jury. The court gave an instruction, favoring the defendant on this

issue, as follows: "* * * if you believe from the evidence in this case that at and before the collision complained of * * * the defendant Batten was traveling in the direction established for one-way traffic over the highway in question and saw the truck driven by defendant Nichols approaching in the wrong direction for traffic over said highway, and saw that an ample berm on defendant Nichols' right side of said highway afforded opportunity for said Nichols to turn to his right out of said one-way traffic strip, you cannot find the defendant Batten guilty of negligence in assuming that said Nichols would turn his truck to the right out of said one-way traffic strip."

We do not think the evidence establishes contributory negligence on the part of the deceased as a matter of law either because of the position he occupied on the truck or for the reason that he remained thereon after meeting the cars from the opposite direction. Whether he observed the cars or not, they passed without incident. Had the defendant taken the course of the vehicles in front of him, the collision would have been averted. Riding on the running board of a moving automobile is not necessarily negligence. It was a question for the jury to determine whether the position in which the deceased was riding at the time of the accident constituted contributory negligence. "* * * in the absence of any prohibitory regulations, whether an occupant (of a motor vehicle) is negligent in riding in a certain position is a question for the jury." Huddy, Cyc. of Automobile Law, sec. 139; 4 Blashfield, Cyc. of Automobile Law & Practice, section 2433; *Crane Co.* v. *Mathes*, (C. C. A.) 42 Fed. (2d) 215; *Rose* v. *Cartier*, 45 R. I. 150, 120 Atl. 581; *Clifton* v. *Caraker*, (Mo. App.) 50 S. W. (2d) 758.

## INSTRUCTIONS

Plaintiff's instruction No. 1 told the jury that it was not negligence "per se" for the decedent to ride upon the bed of the truck with his feet on the running board. This instruction, which is seriously objected to by de-

fendant, means merely that the position of the deceased on the truck did not, alone, disconnected from the circumstances of the occasion, constitute negligence. The instruction not only contained language with which the jury is not presumed to have been familiar but is difficult of interpretation and attempts to deal with an issue by piecemeal. For these and other reasons, it should not have been given; but as other instructions fully presenting the defense of contributory negligence were given, we do not think it constituted prejudicial error.

Numerous other instructions were given or refused. Without detailing or analyzing any of them, we do not think that any of the rulings thereon constitute reversible error.

The Judgment is, therefore, affirmed.

*Affirmed.*

HATCHER, PRESIDENT, dissenting:

Under ordinary circumstances (not involving the-last-clear-chance doctrine) the law does not impose upon an automobile operator in the right the duty of taking the initiative to avoid an approaching operator in the wrong; or the duty of anticipating that the latter will create an emergency before yielding the right of way; or the duty of anticipating that the latter will turn the wrong way after the emergency has arisen. In other words, the law does not put *all the burden* on the one in the right to avoid a collision where the one in the wrong has equal opportunity to do so. Yet, it seems to me that is exactly what the majority opinion has permitted the jury to do in this instance, since the declaration herein exonerates Nichols.

The undisputed facts show that Batten and Nichols approached each other over a one-way traffic lane; that Batten had been lawfully admitted to the lane by a road flagman, while Nichols was in the lane without lawful permission; that for several hundred feet west of the place of collision, the berm to the right of Nichols afforded him ample opportunity to have turned aside for

Batten to pass; and that no circumstance occurred as the two were converging, which should have warned Batten *in advance* that Nichols would yield the lane reluctantly. Since Batten had the right of way, the law permitted him to assume in advance of an emergency that Nichols would turn to his right onto the berm at a timely moment. When Batten realized that Nichols was not doing so, and an emergency had arisen, Batten did precisely what the statute directs—*he turned to his right.* The collision would have been avoided then had Nichols either remained in the lane or turned to his right. In the emergency, however, which Nichols himself had created, he did precisely what the statute forbids—*he turned to his left.* Each turned out of the lane appreciably at the same moment, hence the collision. A very prudent man might have anticipated the conduct of Nichols in time to have avoided the accident. The standard fixed by law, however, is not the caution of the very prudent man, but merely that of the ordinary man. Batten must be judged by that standard. I submit that nothing more could be required of the ordinary man in Batten's position, than compliance with the statute. Moreover, the only negligence charged to Batten in the declaration is driving the truck "at an excessive and unlawful rate of speed, and operating the same on the wrong side of the public road." Both of those charges are disproven.

The principles of law stated in the majority opinion are sound but of what relevancy here? What are the admonitory "circumstances, conditions or consequences," referred to in the majority opinion, which Batten, as an ordinary man may have disregarded? What is the "ordinary care" which he possibly omitted? Neither the declaration nor the majority opinion discloses.

Finding no legal duty omitted by Batten and finding neither allegation nor proof supporting the judgment, I respectfully dissent.

Judge Kenna authorizes me to state that he joins in this dissent.