119 S.E.2d 650 (1961)
Paul E. REILLEY
v.
Howard Lee BYARD and Walter Humphrey.
No. 12081.
Supreme Court of Appeals of West Virginia.
Submitted April 11, 1961.
Decided May 2, 1961.
*651 Schmidt, Laas & Schrader, Thomas B. Miller, Wheeling, Raymond R. Hyre, Moundsville, for plaintiff in error.
James P. Clowes, James D. McDermott, Russell B. Goodwin, Sr., Wheeling, for defendants in error.
CALHOUN, Judge.
This case involves an action of trespass on the case instituted in the Circuit Court of Marshall County by Paul E. Reilley against Howard Lee Byard and Walter Humphrey, in which the plaintiff alleges that he sustained personal injury and property damage as a consequence of an automobile accident caused by the concurrent negligence of the two defendants.
A default judgment was taken against Walter Humphrey and thereafter the case proceeded to trial before a jury against the other defendant, Howard Lee Byard. At the conclusion of the plaintiff's case, the court, on motion of the defendant, directed a verdict in his favor. By an order entered on February 25, 1960, the court overruled the plaintiff's motion to set aside such verdict and to grant him a new trial, and a final judgment was rendered on the verdict in favor of the defendant. From that final judgment the plaintiff prosecutes this writ of error.
*652 The sole question presented is whether the plaintiff made a case proper for jury determination; or, stated otherwise, whether the trial court was warranted in taking the case from the jury and in directing the verdict in favor of the defendant. The only testimony bearing upon that question is that of the plaintiff. The pertinent facts, therefore, are not in dispute so far as the record in the present case is concerned.
On June 10, 1958, the plaintiff and Howard Lee Byard, the defendant, left their home in Glen Dale in Marshall County about 7:40 a. m., and proceeded southward to attend an auction at Ravenswood. The defendant requested that the plaintiff accompany him to the auction, but the trip was made in plaintiff's 1952 model Buick automobile. The plaintiff operated the automobile on the trip to Ravenswood, where they arrived about 10:30 a. m. They made no purchases at the auction. When the two prepared to return to Glen Dale, the defendant volunteered to operate or drive the plaintiff's automobile, and the plaintiff replied that "it would be all right". Consequently, the return trip to Glen Dale was commenced northward over State Route 2, the defendant driving or operating the plaintiff's automobile, and the plaintiff being seated meantime to the right of the driver on the front seat. When Reilley and Byard reached a point about one and one-half miles south of Parkersburg, an automobile operated by Walter Humphrey approached from their right or the east side of the highway on an intersecting secondary road referred to in the testimony as Rural Route 4, and ultimately entered three or four feet upon State Route 2. Under such circumstances, the Buick automobile which was being operated by Howard Lee Byard, defendant, proceeded to its left, across the oncoming or southbound traffic lane, across a berm adjacent to the highway on the left or west side thereof, and struck a telephone pole with such force and violence that the plaintiff's Buick was demolished and he sustained severe personal injuries for which he seeks recovery in this action.
When 900 feet southward on State Route 2 from the point of the intersection, the plaintiff observed the automobile operated by Walter Humphrey approaching at "a moderate speed for a country road". It did not stop at any time prior to "entering onto the highway". When about 250 feet from the intersection of the two highways, the plaintiff "observed the Humphrey car starting into the intersection". In this connection the following questions were propounded to the plaintiff, and he gave the following answers:
"Q. At this time what did you do, if anything? A. At that time I started to say something to Mr. Byard, but at that time he had already put the brakes on and turned the car to the left of the highway.
"Q. Can you state how far the Humphrey car encroached onto state route 2, if any? A. I would say three or four feet.
"Q. At this time that the Humphrey car had encroached on state route 2 in front of your car, had Mr. Byard put the brake on? A. Yes, sir.
"Q. How long before that had he had his brakes on? A. I would say about 200 feet125 feet, something like that.
* * * * * *
"Q. Do you recall prior to the accident how fast the defendant Byard was traveling in the car? A. I would say approximately fifty miles an hour.
"Q. How far was the car in which you were riding from the intersection when the defendant Byard placed his brakes on? A. 200 feet125, somewhere in that neighborhood. Between that.
"Q. At the time that the Humphrey car had encroached onto state route 2, will you state whether or not there was sufficient room for your car to pass *653 around the Humphrey car? A. Yes, sir, there was.
"Q. Was there sufficient room by using the paved portion of the highway? A. Yes, sir.
* * * * * *
"Q. Did that automobile at any time, I believe you stated it was in your view the whole time. Did it at any time stop prior to entering onto the highway? A. No, sir.
"Q. Did it appear to you to slow down in any way or did they continue at the same speed onto the highway? A. As far as I could see. I mean when the car was pulling out like that, and we put the brakes on, everything was happening so fast, and I braced myself, and whether he stopped there or not, I couldn't say.
"Q. I will ask you whether or not, Mr. Byard applied his brakes as soon as the automobile came onto the highway? A. I would say so, yes.
"Q. Could you see how many people were in the Humphrey automobile? A. Two.
"Q. Could you see what those people in the automobile were doing? A. Well, if he wasn't talking, he was looking up the road to look to see if there was any traffic coming.
"Q. Looking up the road. You mean, looking north? A. North.
"Q. Do you recall whether or not he looked toward you or south? A. As I say, not at the time I braced myself and everything was happening. I didn't have time to look at his car any more because everything went out of control.
"Q. But at the time the brakes were applied you were close enough to see two people in the car? A. And he was looking north.
"Q. And he was looking north? A. That is right.
* * * * * *
"Q. When the Humphrey automobile was at that point, I will ask you if that is when Mr. Byard applied the brakes? A. Not quite. The car was on the pavementon the highway.
"Q. In other words, Mr. Byard, applied the brakes after the Humphrey automobile even proceeded more than that? A. A little bit.
"Q. Where were you sitting in that automobile? A. In the front seat, right side.
"Q. Was your view obstructed in any way? A. No, sir.
* * * * * *
"Q. Paul, will you tell us whether or not your recollection, you observed this accident and the conditions existing at that time, will you say whether or not there was enough room to drive around the Humphrey car on route 2? A. Oh, yes, a lot."
Immediately prior to the occurrence of the accident, the plaintiff's Buick automobile, including brakes and steering apparatus, was in good mechanical condition, and it was equipped with good tires. State Route 2 is comparatively straight and level for a distance of 900 feet southward from the intersection. As Reilley and Byard approached the intersection from a point 900 feet southward, they had a clear and unobstructed view of Rural Route 4 and of the point of its intersection with State Route 2. At the time in question, the highway was dry and visibility was good. The paved or hard-surfaced portion of State Route 2 in this area is 22 feet in width. At the scene of the accident there is a "pretty level" berm 15 feet in width on the left or west side, the opposite side from which the Humphrey automobile approached.
The testimony fails to disclose what happened to the Humphrey automobile after it *654 proceeded three or four feet "onto state route 2". There is no evidence that it proceeded beyond that point. From the record perhaps it may be inferred reasonably that the plaintiff's injuries were of such nature that he did not observe the Humphrey automobile after the accident.
Photographs indicate that there is a white line separating the northbound lane from the southbound lane of State Route 2 at the scene of the accident. Assuming that the front end of the Humphrey automobile proceeded three or four feet upon the paved portion of the highway and that the white line is in the center thereof, there would have remained available to the defendant in the operation of the Buick the remaining 7 or 8 feet of the northbound lane and the entire 11 feet width of the southbound lane, in addition to the 15-foot berm on his left or the west side of the highway, or an aggregate width of 33 or 34 feet of hard surface and berm. There was no oncoming traffic in the southbound lane, and there were no motor vehicles parked on the 15-foot berm.
The trial court, in directing the verdict, apparently found from the evidence as a matter of law that a sudden emergency was created from causes beyond the control of the defendant, and that the defendant in such circumstances acted as a reasonably prudent man. Counsel for the plaintiff, on the other hand, contend that such a finding by the trial court amounted to an unwarranted invasion of the province of the jury.
It is pertinent to observe that the charge made by the plaintiff against defendant Byard is not that his negligence constituted the sole proximate cause of the accident, but rather that Byard's negligence concurred with that of Humphrey proximately to produce the accident and the consequent damages. In such a situation it is immaterial which of the two was guilty of the greater negligence, but if the negligent act or acts of one concurred and combined with the negligent act or acts of the other to produce the proximate cause of the accident, then each may be jointly and severally liable. 65 C.J.S. Negligence § 102, page 639; 60 C.J.S. Motor Vehicles § 254, page 619; 5A Am.Jur., Automobiles and Highway Traffic, Section 238, pages 371-72; The Law of Automobiles in Virginia and West Virginia, Volume 1, Section 18, pages 52-54; Clay v. Walkup, W.Va. 107 S.E.2d 498; Lewis v. Mosorjak, 143 W.Va. 648, 104 S.E.2d 294; Hartley v. Crede, 140 W.Va. 133, 82 S.E.2d 672; Walker v. Robertson, 141 W.Va. 563, 91 S.E.2d 468; Wilson v. Edwards, 138 W.Va. 613, 77 S.E.2d 164; Sigmon v. Mundy, 125 W.Va. 591, 25 S.E.2d 636. "Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it." The Law of Automobiles in Virginia and West Virginia, Volume 1, Section 18, page 53; 60 C.J.S. Motor Vehicles § 427, page 1043. It is no defense to Byard, therefore, in this action by a third person that Humphrey may have been guilty of negligence, or that the negligence of Humphrey may have been the greater. Whether the negligence of two or more persons is concurrent, and taken together proximately causes injury to a plaintiff, is ordinarily a jury question. Clay v. Walkup, W.Va., 107 S.E.2d 498; Lewis v. Mosorjak, 143 W.Va. 648, 104 S.E.2d 294.
The application of the sudden emergency doctrine ordinarily involves a judicial determination by the trier of fact of three factual propositions: (1) Whether the defendant was confronted with a sudden emergency; (2) if so, whether the emergency was created by the defendant; and (3) if the defendant was confronted with a sudden emergency not created in whole or in part by his own negligence, whether in the circumstances of such emergency he acted as a reasonably prudent person would *655 have acted in like circumstances. 61 C.J.S. Motor Vehicles § 526, pages 446-447; 60 C.J.S. Motor Vehicles § 257, page 628; 5A Am.Jur., Automobiles and Highway Traffic, Sections 211 and 212, pages 356-58; States v. Riss & Co., Inc., 139 W.Va. 1, 80 S.E.2d 9; Matthews v. Cumberland and Allegheny Gas Co., 138 W.Va. 639, 658, 77 S.E.2d 180, 191; Somerville v. Dellosa, 133 W.Va. 435, 442-443, 56 S.E.2d 756, 762. Such are ordinarily questions of fact for the jury. Spurlin v. Nardo, W.Va., 114 S.E.2d 913; Meadows v. Stickler, W.Va., 110 S.E.2d 380; Matthews v. Cumberland and Allegheny Gas Co., 138 W.Va. 639, 659, 77 S.E.2d 180, 191; The Law of Automobiles in Virginia and West Virginia, Volume 1, Section 16, pages 41-42; 2 M.J., Automobiles, Section 56, page 531; 5A Am. Jur., Automobiles and Highway Traffic, Section 1074, page 927. "Where the evidence is conflicting or different inferences reasonably may be drawn from the evidence, it is for the jury, or for the trial court in actions tried without a jury, to determine whether defendant was confronted with an emergency, the nature and extent of the emergency, whether the emergency was created by defendant, and whether defendant conducted himself in the emergency as an ordinarily prudent person in like circumstances might have done." 61 C.J.S. Motor Vehicles Section 526, pages 446-447. "When one is suddenly imperiled, the law makes allowance for his natural alarm and requires of him merely the care of the average person similarly confronted. Whether such care is exercised, or not, is ordinarily a jury question." O'Dell v. Universal Credit Co., 118 W.Va. 678, pt. 5 syl., 191 S.E. 568, 569. See also Isabella v. W. Va. Transportation Co., 132 W.Va. 85, 51 S.E.2d 318; Robertson v. Hobson, 114 W.Va. 236, pt. 6 syl., 171 S.E. 745; Harrison Engineering & Construction Co. v. Director General of Railroads, 86 W.Va. 271, pt. 2 syl., 103 S.E. 355; Roberts v. Baltimore and Ohio Railroad Co., 72 W.Va. 370, pt. 2 syl., 78 S.E. 357; Warth v. Jackson County Court, 71 W.Va. 184, 76 S.E. 420. "If an emergency really existed, then what a reasonable man should or should not have done is in the realm of inference. It is to be ascertained by a fair appraisal of the facts proved and a reasonable consideration of the usual and ordinary reaction of men confronted with similar situations. The composite judgment of a jury in this respect is usually the best means and truest test by which to ascertain and arrive at the reasonable and proper inference to be ultimately drawn." Virginia Transit Co. v. Durham, 190 Va. 979, 995, 59 S.E.2d 58, 66; Daniels v. C. I. Whitten Transfer Co., 196 Va. 537, 547, 84 S.E.2d 528, 534.
It is obvious that the defendant lost control of the Buick automobile he was operating. There can be no other reasonable conclusion from the evidence. Obviously he did not purposely drive the Buick off the hard surface, across the 15-foot berm and into a telephone pole with severe force and violence. Rational men do not purposely operate motor vehicles in such manner. Not only traffic regulations, but also prudence and fundamental human instincts of self-preservation dictate otherwise. When confronted with a sudden emergency, a motorist may, in proper circumstances, be justified in purposely turning to his left into or across the oncoming traffic lane. Lawson v. Dye, 106 W.Va. 494, 145 S.E. 817, 63 A.L.R. 271; Daniels v. C. I. Whitten Transfer Co., 196 Va. 537, 84 S.E.2d 528; The Law of Automobiles in Virginia and West Virginia, Volume 1, Section 77, page 313; 5A Am.Jur., Automobiles and Highway Traffic, Section 369, page 460. In the case now under consideration, even though a sudden emergency was created and even though the defendant acted as a reasonably prudent man, in such circumstances, in applying his brakes and in turning the Buick automobile to the left, it was for the jury to determine whether the defendant in so doing negligently lost control of the automobile; that is, whether a reasonably prudent man, under the *656 circumstances, in applying his brakes and turning to his left, would have lost control of the automobile and permitted it to leave the highway.
The rights of the favored driver and of the disfavored driver at an intersection are relative and not absolute. 60 C.J.S. Motor Vehicles § 363, page 876; 5A Am.Jur., Automobiles and Highway Traffic, Section 304, page 420; 2 M.J., Automobiles, Section 23, page 466. The mere fact that a driver has the right of way at an intersection or otherwise does not absolve him of his duty to exercise reasonable care. Vaughan v. Oates, 128 W.Va. 554, pt. 1 syl., 37 S.E.2d 479; Webb v. Batten, 117 W.Va. 644, syl., 187 S.E. 325; Jones v. Cook, 96 W.Va. 60, pt. 3 syl., 123 S.E. 407; Burdette v. Henson, 96 W.Va. 31, pt. 2 syl., 122 S.E. 356, 37 A.L.R. 489. "At a street or highway intersection, unless the circumstances apprise him to the contrary, the driver of a motor vehicle is not required to anticipate violation of the law or the rules of the road by others, but rather may assume that others will comply therewith and exercise due care; but the right to rely on the care of others does not relieve him of the duty of exercising care himself." 60 C.J.S. Motor Vehicles § 361, pages 859-860. See also Divita v. Atlantic Trucking Co., 129 W.Va. 267, 277, 40 S.E.2d 324, 330. While a driver of a motor vehicle "may assume that others will exercise due care, he cannot for that reason omit any of the care which the law demands of him either in the original instance, or after discovering apparent manifestations which should reasonably induce him to believe that his assumption was not well founded as a matter of fact." The Law of Automobiles in Virginia and West Virginia, Volume 1, Section 95, page 406. See also Tochek v. Monongahela Transport Co., 109 W.Va. 20, 24, 152 S.E. 776, 777. "The particular point of time when a person is no longer warranted in indulging such assumption is for the jury." Breedlove v. Galloway, 109 W.Va. 164, 167, 153 S.E. 298, 300.
While the pertinent facts presented by the record in this case are not in dispute, we believe they are such that reasonable men may draw different conclusions from them, and that, therefore, the case was one for the jury. Brace v. Salem Cold Storage, W.Va., pt. 5 syl., 118 S.E.2d 799; Spurlin v. Nardo, W.Va., pt. 3 syl., 114 S.E.2d 913; Lawrence v. Nelson, W.Va., pt. 1 syl., 113 S.E.2d 241; Prettyman v. Hopkins Motor Co., 139 W.Va. 711, pt. 2 syl., 81 S.E.2d 78; American Telephone & Telegraph Co. v. Ohio Valley Sand Co., 131 W.Va. 736, 740, 50 S.E.2d 884, 886; Raines v. Chesapeake & O. Ry. Co., 39 W.Va. 50, pt. 2 syl., 19 S.E. 565, 24 L.R.A. 226. "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Nichols v. Raleigh-Wyoming Coal Co., 112 W.Va. 85, syl., 163 S.E. 767; Hambrick v. Spalding, 116 W.Va. 235, pt. 2 syl., 179 S.E. 807; Fielder v. Service Cab Co., 122 W.Va. 522, pt. 1 syl., 11 S.E.2d 115; Burgess v. Sanitary Meat Market, 121 W.Va. 605, pt. 1 syl., 5 S.E.2d 785, 6 S.E.2d 254; Perry v. Scott, 134 W.Va. 380, syl., 59 S.E.2d 652; Prettyman v. Hopkins Motor Co., 139 W.Va. 711, 730-731, 81 S.E.2d 78, 88; Belcher v. Norfolk & W. Ry. Co., 140 W.Va. 848, 853, 87 S.E.2d 616, 620; Jenkins v. Chatterton, 143 W.Va. 250, pt. 1 syl., 100 S.E.2d 808.
For the reasons stated herein the judgment of the Circuit Court of Marshall County is reversed, the verdict directed in favor of the defendant is set aside, and a new trial is awarded.
Judgment reversed; verdict set aside; new trial awarded.