# Richmond

Alphonso N. Cowles v. Charles E. Zahn, Sr.

January 17, 1966.

Record No. 6108.

Present, All the Justices.

*A. Scott Anderson* and *Nathan H. Smith* (*Donald R. Taylor; Sands, Anderson, Marks & Clarke*, on brief), for the plaintiff in error.

*William L. Birdsong* (*Robert E. Pembleton*, on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

This is an action for personal injuries arising out of an automobile accident in which the trial court entered judgment on a jury verdict in the amount of $18,000 for the plaintiff, Charles E. Zahn, Sr., against the defendant, Alphonso N. Cowles, who is here on a writ of error to the judgment.

Defendant contends that the trial court erred in (1) refusing instructions on sudden emergency and assumption of risk; (2) not holding plaintiff guilty of contributory negligence as a matter of law; and (3) drawing its own diagram of the scene of the accident and making it the court's exhibit.

The accident occurred on the night of March 18, 1964, at approximately 8:15 P.M., on State route 33, in a 55 mile per hour zone, 2.7 miles east of New Kent Courthouse, Virginia. Route 33 is a two-lane road, 20 feet 4 inches wide, and runs generally east and west, but before reaching the scene of the accident there is a long sweeping curve to the left for eastbound traffic, a gradual dip in the road, and then a slight rise. The road was dry, the weather clear, and the night dark.

Plaintiff was driving his automobile east on route 33 toward West Point, Virginia, when its motor cut off. He pulled the car off the hard surface of the road onto the narrow shoulder as far as he could get it. After he was unable to restart it, he and his wife got out of the car, leaving all its lights on, and stood behind the car to await help. Shortly thereafter four men in a truck came upon the scene. The driver parked his truck ahead of plaintiff's car and all the men came back to offer assistance. They proceeded to examine the motor, and one of the men suggested that plaintiff turn on the starter. Plaintiff went to the left side of the car, which was on the hard surface of the road, opened the door, leaned in and turned on the starter switch, and while he was in this position defendant's car crashed into the rear of his car. Plaintiff was severely injured as a result of the collision.

The truck driver testified that he was driving a panel truck east on route 33 at a speed of 55 miles per hour, with three fellow employees as passengers, when he saw the Zahn car stopped on the highway about 500 to 600 feet ahead; that when he arrived on the scene he parked the truck five or six car lengths east of the Zahn car, left the lights burning and the parking lights flashing, and he and his companions went back to see if they could help; that the right wheels of the Zahn car were as far over on the narrow shoulder of the road as they could get; that he held up the hood of the Zahn car while his companions examined the motor; and that he then noticed a car pull slowly abreast of the Zahn car and at about the same time the impact occurred.

The testimony of the three passengers in the truck was substantially the same as the driver's, except they said they first saw the tail lights of the Zahn car when they were about 500 feet away.

Rev. Edward T. Gant testified that he was traveling east on route 33 at a speed of 55 miles an hour when he saw the tail lights of the Zahn car. He could not estimate how far he was from the vehicle when he first saw it, but he brought his car to almost a complete stop before turning into the westbound lane to pass. When his car was abreast of the Zahn car he turned to look at it and saw the headlights of defendant's car and immediately heard the crash. He did not see the lights of the truck parked ahead of the Zahn car until after he pulled into the westbound lane. A piece of flying glass punctured one of the tires on his car.

Mrs. Zahn testified that after their car stalled she stepped out of it onto the shoulder of the road and moved around in back of the car in order to stand on the hard surface; that almost immediately the men in the truck came up and offered help; that shortly thereafter the Gant automobile came by very slowly; that she saw defendant's car approach and "it sounded like it was coming awful fast"; and that at the time of the accident her husband was standing in the road with the left front door of their car open, reaching in the car.

The investigating officer testified that the right wheels of defendant's car left 50 feet of skid marks leading up to the point of impact; that the skid marks were entirely in the eastbound lane and curved to the left before ending 3 feet 8 inches from the center line of the highway, and at that point he found glass, debris and gouge marks in the highway; that plaintiff's car was knocked along the highway 39 feet where it overturned, and the lights were still burning

when he arrived on the scene; that defendant's car traveled 102 feet from the point of impact before coming to rest on the south side of the highway against an embankment; that the damage to plaintiff's car was on the left rear fender and to defendant's car on the right front fender; that plaintiff's car could not have been pulled completely off the hard surface because of the narrow shoulder of the road; that the collision occurred from 200 to 300 feet east of the end of the curve; that motorists traveling east, in the daytime, have an unobstructed view for 500 feet to the point of the accident; that defendant told him after the accident that when he first applied his brakes they did not hold, but they held when he applied them a second time; and that defendant had the odor of alcohol on his breath. He did not testify as to the distance a motorist traveling east on the highway at night could see before reaching the point of the accident.

Defendant testified that he was traveling between 50 and 52 miles per hour with his lights on high beam; that when he came out of the curve he saw the tail lights of the Zahn car about 50 feet away, and immediately put on his brakes; that he then saw the Gant car headed east in the westbound lane of the road, abreast of the Zahn car; that he did not see the Zahn and Gant cars any sooner because the curve in the road prevented it; and that he had not drunk any alcoholic beverages.

Defendant's wife, a passenger in his car, said that she saw the tail lights on the Zahn car when they came out of the curve; and that the Zahn car was stalled near the end of the curve.

Defendant contends that the trial court erred in refusing to grant an instruction on sudden emergency.

Under the sudden emergency doctrine, the driver of an automobile is excused from liability if, without prior negligence on his part, he is confronted with a sudden emergency and acts as an ordinarily prudent person would have acted under the same or similar circumstances. *Pickett* v. *Cooper*, 202 Va. 60, 63, 116 S. E. 2d 48, 51; *Southern Passenger Motor Lines* v. *Burks*, 187 Va. 53, 60, 46 S. E. 2d 26, 30.

Ordinarily the question of application of the sudden emergency doctrine is for the triers of fact. When evidence is conflicting or different inferences may be drawn from the evidence, it is for the jury to say (1) whether defendant was confronted with an emergency; (2) whether the emergency, if one existed, was created by

defendant's own negligence; and (3) whether defendant conducted himself as an ordinarily prudent person might have done under the same or similar circumstances. *Virginia Transit Co.* v. *Durham*, 190 Va. 979, 995, 59 S. E. 2d 58, 66; *Daniels* v. *C. I. Whitten Transfer Co.*, 196 Va. 537, 547, 84 S. E. 2d 528, 534; *Baxley* v. *Fischer*, 204 Va. 792, 796, 134 S. E. 2d 291, 294; 61 C. J. S., Motor Vehicles, § 526 e. (1), pp. 446, 447.

In the present case the evidence was in sharp conflict as to the distance defendant could or should have seen the tail lights on the stalled Zahn automobile. Whether defendant's failure to see the Zahn car sooner was due to lack of visibility on account of the curve, his excessive speed under the circumstances, inattention on his part, or the movements and position of the Gant car, or whether he failed to react to the situation ahead as soon as an ordinarily prudent person would have under the same or similar cricumstances, were jury questions. Hence defendant was entitled to an instruction embodying the sudden emergency doctrine and it was error for the trial court to refuse it.

■ Defendant was not entitled to an instruction on assumption of risk.

In the recent case of *Arrington, Adm'r* v. *Graham, Adm'r*, 203 Va. 310, 314, 124 S. E. 2d 199, 202, we said that the essence of assumption of risk is venturesomeness; contributory negligence is carelessness. It is perfectly manifest that there was nothing venturesome on the part of the plaintiff in trying to start his car. He was required, under the provisions of Code § 46.1-248, as amended, to remove the stalled car from the highway as soon as possible, and at the time of his injury he was engaged in the performance of that duty.

■ We do not agree with defendant's contention that plaintiff was guilty of contributory negligence as a matter of law.

Of course, a person engaged about a motor vehicle on the highway is required to exercise ordinary car - for his own safety, but the mere fact that he was on the traveled portion of the road in the performance of a duty required of him under the statute does not render him guilty *per se* of contributory negligence. The trial court instructed the jury on the question of contributory negligence of the plaintiff and it was for them to say whether plaintiff acted as an ordinarily prudent man would have acted under the same or similar circumstances. *Bonich* v. *Waite*, 194 Va. 374. 378, 73 S. E. 2d 389,

392; 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 381, p. 931, and the cases there cited.

■ Defendant says the diagram drawn by the court and placed in evidence as the court's exhibit was prejudicial to his case and was reversible error.

The trial court drew a diagram of the purported scene of the accident and used it in questioning the state trooper. When it was shown to the trooper he pointed out that it did not show the curve in the road, but the court had him mark on the diagram the course of the skid marks made by defendant's car, the point on the highway where the debris was found, and the location of the parties' cars when he arrived on the scene.

Since this case will have to be reversed for failure of the trial court to grant an instruction on sudden emergency, we do not deem it necessary to discuss whether the court's action in putting its diagram in evidence was reversible error. Suffice it to say that on a retrial of the case the trial court should not place in evidence as its exhibit an incomplete diagram of the scene of the accident.

For failure of the trial court to instruct the jury on sudden emergency, the judgment is reversed and set aside and defendant is granted a new trial.

*Reversed and remanded.*