# Richmond

## Vera Z. Lendvay v. John David Sobrito.

January 18, 1971.

Record No. 7263.

Present, Snead, C.J., l'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*Edward R. Parker (Parker & Sullivan*, on brief), for plaintiff in error.

*Nathan H. Smith (J. Calvitt Clark, Jr.; Sands, Anderson, Marks & Clarke*, on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

This appeal from a judgment entered by the trial court upon a jury verdict for the defendant pivots on whether the trial court erred

in granting a sudden emergency instruction (Instruction G[1]) requested by the defendant.

The case arose as the result of an automobile collision which occurred on August 2, 1967, at approximately 3:00 p.m., in the 300 block of East Grace Street in Richmond. Grace Street at this point is a westbound, one-way street consisting of four well defined lanes. The three northern lanes are for moving traffic and there is a parking lane adjacent to the south curb. The weather was clear and the street was dry at the time of the collision.

The impact, which occurred in the middle or center lane of the three traffic lanes, was between the right front of the defendant's vehicle and the rear bumper of the car driven by plaintiff.

Plaintiff testified she was driving west in the middle lane. The traffic signal turned red for westbound traffic as she approached the intersection of Third and Grace Streets. Two or three cars ahead of her in the middle lane stopped in obedience to this signal and she was either stopped or almost stopped when her car was struck from the rear by defendant's car. Mrs. Lendvay further testified that she observed defendant's car in her rear view mirror as she was stopping. At that time defendant was moving from right to left and appeared to be attempting to drive his car from the center lane to the left lane or south traffic lane.

Defendant testified that he was driving approximately 20 miles per hour in the center lane as he proceeded west from the intersection of Fourth and Grace Streets; that he intended to change from the center lane to the left traffic lane in order to make a left turn; that he observed a white car in the center lane some distance ahead of him which was not near enough to interfere with his changing lanes; that he then glanced in his mirror for traffic following him; that when he again looked ahead he saw the plaintiff, who was driving a black car, just ahead of him in the center lane, applying her brakes; and that plaintiff's car was so close that he did not have time to stop and that the collision occurred as he was attempting to change from the center

---

[1] "INSTRUCTION G

"If the jury believe from the evidence that the defendant without negligence on his part, was confronted with a sudden emergency, then he was not required to exercise the same good judgment in such sudden emergency which would have been required of him in the absence of such sudden emergency; and in such a situation the defendant cannot be held liable for any error in judgment on his part in any such sudden emergency if you believe from the evidence that he exercised such judgment as an ordinarily prudent person would have exercised in the same or similar circumstances."

lane into the left lane. Defendant concedes that he never saw plaintiff until a moment before impact when he looked forward after glancing in his rear view mirror.

L. T. Brown, who was standing on the sidewalk on the south side of Grace Street, was called by defendant as a witness. He testified that he observed both plaintiff and defendant as they traveled west on Grace Street. When he first saw them both cars were in the center lane. Defendant was then approximately 1½ car lengths behind plaintiff. His testimony was that plaintiff appeared to be looking to her right and that she swerved into the right lane and then partly back into the center lane where the collision occurred. Brown testified that plaintiff traveled a distance of only 40 to 45 feet during the time he observed her. From Brown's testimony it is fair to infer that there were no other vehicles between the cars driven by plaintiff and defendant.

From the evidence related above, it would appear that the plaintiff was in plain view of defendant as she drove west on Grace Street. Sobrito's failure to see the Lendvay car proceeding ahead of him until a moment before impact conclusively establishes that he failed to use ordinary care in keeping a proper lookout.

■ We are of the opinion that the trial court erred in granting Instruction G requested by the defendant since Sobrito's own testimony establishes that he was not without fault in bringing about the emergency with which he was confronted. *Petcosky* v. *Bowman*, 197 Va. 240, 89 S.E.2d 4 (1955); *Ragsdale* v. *Jones*, 202 Va. 278, 177 S.E.2d 114 (1960).

*Baxley* v. *Fischer*, 204 Va. 792, 134 S.E.2d 291 (1964) and *Cowles* v. *Zahn*, 206 Va. 743, 146 S.E.2d 200 (1966) relied on by defendant are distinguishable on their facts from the case before us. We held a jury issue was created because of the sharp conflicts in the evidence in *Baxley* and *Cowles*. Here Sobrito's failure to keep a proper lookout is clearly established by his own evidence hence a jury issue on sudden emergency was not created.

■ Plaintiff also assigns error to the action of the trial court in excluding the evidence of one of the plaintiff's witnesses, John A. Morrissey. Morrissey was called for the purpose of impeaching Brown. His evidence, which was excluded by the trial court, was taken outside of the presence of the jury and appears in the record.

One of the universally recognized methods of impeaching a witness is to show his bad general reputation for truth and veracity in the community where he lives, or among his neighbors and acquaint-

ances, by witnesses who know that reputation. The evidence must be confined, however, to the general reputation of the witness for truth and veracity. The commission of specific acts of untruthfulness or other bad conduct may not be shown. *Bradley* v. *Commonwealth*, 196 Va. 1126, 86 S.E.2d 828 (1955); *Fenner* v. *Commonwealth*, 152 Va. 1014, 148 S.E. 821 (1929); *Allen* v. *Commonwealth*, 122 Va. 834, 94 S.E. 783 (1918).

A review of Morrissey's testimony reveals that he was testifying of his own opinion of Brown's reputation for truth and veracity based on specific acts of misconduct while Brown was employed by him. His testimony failed to show Brown's reputation for truth and veracity among his neighbors and acquaintances and was properly excluded by the trial court.

*Reversed and remanded.*