Richmond

CAROLINA COACH COMPANY, et al. v. IRA WILLIAM STARCHIA, Administrator, etc., et al.

June 9, 1978

Record No. 770388

Present: All the Justices.

Daniel Hartnett (*Ayers, Hartnett & Custis,* on brief) for plaintiffs in error.

Baxley T. Tankard; William M. Harris ( *C.A. Turner, Jr.; Taylor, Gustin, Harris, Fears and Davis* on brief) for defendants in error.

COMPTON, J., delivered the opinion of the Court.

In this action to recover damages for an alleged wrongful death in a motor vehicle collision, we are confronted with issues of negligence and the claim that the jury was misdirected.

On June 28, 1975 in Northampton County, on U.S. Route 13 between Eastville and Machipango, a Trailways bus collided with the rear of a Pontiac station wagon. The driver of the station wagon, Emma Ella Smith, and her passenger, Fayetta Starchia Belote, 63 years of age, were both killed.

Subsequently, Mrs. Belote's administrator brought this action for damages against Mrs. Smith's personal representative; Carolina Coach Company, which owned the bus; and Harvey Harold Wood, the bus driver. The jury found for the plaintiff against the bus company and its driver, assessing damages in the amount of $33,271.10. It also found in favor of the Smith estate. We awarded Carolina Coach and Wood a writ of error to the December 1976 judgment order entered on the verdict.

The accident occurred at 8:30 a.m. on a clear day. At the scene, U.S. Route 13 is a dual highway with two northbound and two southbound lanes separated by a grassy median area. The hard-surfaced highway was nearly straight and level. The accident occurred in the southbound lanes just north of a short left turn lane abutting the two southbound travel lanes. The turning lane led to a

crossover affording access through the median. A short distance North of the crossover and on the east side of the highway was located a physician's office, which was the destination of the Smith vehicle.

Wood, the bus driver, testified that as he was proceeding south in the right lane at a speed of between 50 and 55 miles per hour, being followed at 400 feet by another Trailways bus, he observed ahead a station wagon, apparently unoccupied, stopped adjacent to the right edge of the roadway on an eight-foot shoulder. At the time, Wood's bus was approximately 600 feet north of the station wagon. Wood continued to drive south in the right lane; when his bus was approximately 100 feet from the Smith vehicle, the station wagon, without giving a signal, slowly "came onto the [right] lane and then kind of straightened up," according to Wood. He noticed that the driver then seemed to "slump over" the steering wheel as the station wagon slowed almost to a stop. Wood said he immediately applied brakes and attempted to pull to the left but was unable to avoid the Smith vehicle. The full rear of the station wagon was struck by the right front of the bus. According to a bus passenger, the impact caused the Smith vehicle to turn "a complete somersault" and land on all four wheels, totally engulfed in flames.

Upon his arrival within ten minutes of the crash, the investigating police officer found the bus stopped, still headed south, straddling the broken center line dividing the two southbound lanes. The station wagon came to rest in the turning lane, its front pointing north, approximately 200 feet south of the point of impact. Skid marks from the bus tires, averaging about 140 feet in length, commenced "a few feet" south of the point of collision, which was determined with reference to a fresh gouge mark made near the center of the right-hand lane. Photographs taken immediately after the collision show that these skid marks began when the bus was near the center of the right southbound lane and proceeded at a gradual angle into a part of the left travel lane terminating at the wheels of the stopped bus.

The officer found the second bus stopped on the shoulder of the road south of the scene. He noticed "deviation marks" in the highway left by that bus, indicating, according to the investigator, that it had swerved to the right past the impact area. These marks were between the point of collision and the place where Wood's bus was stopped.

The bus passenger, Margaret Chester Short, who had been sitting on the front seat to the right of the driver, testified that as she glanced ahead after looking at the scenery on the left, she

noticed for the first time the station wagon approximately 36 feet ahead of the bus. The Smith vehicle at that time "was moving slowly" south in the right lane entirely on the highway. The witness stated that the bus driver "sat still for a few seconds" and that he "went right straight on" without applying brakes until the collision occurred.

Another eyewitness, David O. Satchell, Jr., was standing in his home east of the highway and about 160 yards from the road. He "just happened to be looking out" a window and noticed the station wagon southbound "driving along real slow, [acting] like he was going to stop." The witness observed that vehicle for "about a second" or "a couple of seconds" and turned away. Three or four more seconds passed and the witness then heard the collision, looked back to the highway, seeing the bus for the first time after it had struck the Smith vehicle. This witness agreed that the southbound lane of the highway was at a "considerably" higher level than the northbound lane. He admitted that he could not determine whether the station wagon was moving on the shoulder of the road or upon the hard surface or, if on the pavement, in which of the two lanes it was traveling.

The driver of the second bus only saw, from his stated position of 400 feet to the rear of Wood's bus, the station wagon "parked" on the shoulder and did not observe it again until after the collision. He denied having to swerve his bus around the accident scene, stating that he merely "pulled to the right of it" and stopped on the shoulder.

The first question to be decided is whether, as a matter of law, Wood was free of any negligence which was a proximate cause of the accident. The contention is made on his behalf that the evidence is without conflict and demonstrates that the station wagon was driven from a stopped position on the shoulder of the road suddenly, without any visible signal, onto the highway directly in front of the fast-approaching bus, at a time when Wood was unable to avoid the accident in the exercise of reasonable care. We do not agree that this issue was a question of law to be decided by the court.

We believe it was for the jury to say, as we view the evidence in a light most favorable to the plaintiff, whether Wood failed to keep a proper lookout or failed to keep his vehicle under proper control, and whether such failure or failures, if any, proximately caused the accident. This is true even if we accept the bus company's

theory that the station wagon was, in fact, stopped on the shoulder.[1] Wood first observed the Smith vehicle from a distance of 600 feet away. Reasonably to be inferred from the testimony of the eyewitnesses Short and Satchell, and the physical facts, is that the next time Wood paid any particular attention to the station wagon was after it had slowly moved completely into the right travel lane, at which time the bus was 100 feet away and the collision imminent. The only other object, moving or otherwise, on or about the roadway which could in any way have affected Wood's operation of his bus was the other bus traveling to his rear. Yet, he continued to drive his own bus at an undiminished speed in the same lane toward the only thing which could present any possible hazard ahead of him, and failed to ascertain that it had moved into his path until it was completely on the hard surface, straight in the road, heading south. In spite of Wood's testimony that he was "scanning" the road ahead and that he was always "aware" of the station wagon after he first saw it, the fact remains that the vehicle, traveling at a low rate of speed, managed to reach a position entirely on the roadway before Wood even attempted to apply brakes or turn to avoid the accident.

Mrs. Short placed the station wagon entirely on the highway ahead of the bus for a period of "a few seconds". Satchell's evidence supports the conclusion that the Smith vehicle was moving south on the roadway even longer, that is, for about six seconds. It is true that he could not state whether or not the station wagon was on the hard surface. But no witness said it was being driven straight south on the shoulder. Thus the jury could properly find that the Smith vehicle was moving from the time Satchell first saw it until he heard the collision and that such movement was always along the roadway. At 50 miles per hour, the bus traveled in excess of 70 feet per second. See Code § 46.1-195. So under the foregoing evidence the bus covered at least 420 feet during the period when the station wagon was upon the roadway ahead of it. Yet within such distance, Wood failed to even begin to move the bus to the open left southbound lane nor were the brakes effectively applied so as to reduce the speed of the bus until after the impact occurred. We think the jury could have found that Wood

---

[1] The plaintiff contends that the jury could have disbelieved both bus drivers' statements as to that fact because the other eyewitnesses' testimony supported the idea that the Smith vehicle never left the hard surface but merely slowed on the pavement to allow the busses to pass preparatory to making a left turn through the median to the physician's office.

was negligent in failing to react soon enough, perhaps, in part, because he was fearful of being overrun by the second bus. Accordingly, we hold that the trial court correctly submitted this issue of primary negligence to the jury.

■ The second issue raised by the assignments of error of Wood and the bus company is whether Mrs. Smith, as a matter of law, was guilty of negligence which was the sole proximate cause of the accident. Among other things, she had the duty, before starting to enter the southbound lane (if she began from a stopped position on the shoulder), to first see that such movement could be made in safety and if the operation of any other vehicle would be affected by such maneuver, to give a signal plainly visible to the driver of such other vehicle of her intention to make such movement. Code § 46.1-216. The evidence is uncontradicted that a signal was not given. Hence, if she had stopped on the shoulder, Mrs. Smith was guilty of negligence as a matter of law. But we reject the contention that, as a matter of law, such negligence was the sole or a proximate cause of the accident; these were jury questions. Whether, on the one hand, the bus driver's inattention concurred with the negligence of Mrs. Smith to produce the accident or whether, on the other hand, a driver's individual failure to exercise proper care was the sole cause of the collision, with the other driver's negligence being a remote cause, were all questions of fact, and the trial court properly so ruled.

■ Next, the bus company and Wood urge that the trial court erred by submitting to the jury, in Instruction 3, the question whether Mrs. Smith gave a signal. These defendants also contend the trial court erred in refusing Instruction I which, in part, would have told the jury that Mrs. Smith was negligent in failing to give the signal. We agree with both contentions. As we have already said, the evidence showed, without contradiction, that a signal was not given. To permit the jury to find otherwise was contrary to the evidence and highly prejudicial to the bus company and Wood. Instead, the jury should have been told by proper instructions (we disapprove the form of proffered I) that if they believed Mrs. Smith moved from a stopped position on the shoulder onto the roadway, she was negligent for failing to give the required signal, leaving the question of proximate cause to the jury.

■ Finally, *Wood* and the bus company argue that the court below erred in refusing to grant a sudden emergency instruction.[2] We agree; this action, too, was reversible error.

In the 62 Virginia cases found which contain any more than a passing comment on the sudden emergency doctrine, the earliest being *South West Improvement Co.* v. *Smith's Adm'r,* 85 Va. 306, 319, 7 S.E. 365, 371 (1888), citing *Richmond & Danville Railroad* v. *Morris,* 72 Va. (31 Gratt.) 200, 210 (1878), and the most recent being *Lendvay* v. *Sobrito,* 211 Va. 548, 550, 178 S.E.2d 532, 534 (1971), there has been no substantial change in the statement of this common-law rule that one is excused from liability if, without prior negligence on his part, he is confronted with a sudden emergency and acts as an ordinarily prudent person would have acted under the same or similar circumstances. *E.g., Cowles* v. *Zahn,* 206 Va. 743, 746, 146 S.E.2d 200, 203 (1966). And when the evidence is in conflict or when diverse inferences may be properly drawn from the evidence, it is for the jury to say (1) whether defendant was confronted with an emergency; (2) whether any such emergency was created by defendant's own negligence; and (3) whether, after creation of the emergency, defendant acted as an ordinarily prudent person under the circumstances. 206 Va. at 746-47, 146 S.E.2d at 203.

During the trial, the bus driver's theory (that the collision was caused solely by the action of the station wagon suddenly moving into his lane) was repeatedly attacked with the suggestion that he could have, or should have, taken evasive action by moving into the open left southbound lane, accompanied by the additional implication that Wood had time to execute such a maneuver. Now, the plaintiff and the Smith estate argue there was no emergency and, alternatively, that Wood's inattention created the emergency. They say the doctrine is inapplicable because, after the emergency was created, the collision was inevitable since Wood did not have

---

[2] The tendered instruction provided:

"The court instructs the jury that if you believe from a preponderance of the evidence that the defendant, Harvey Wood, the driver of the bus, without negligence on his part was confronted with a sudden emergency then he was not required to exercise the same good judgment in such sudden emergency which would have been required of him in the absence of such sudden emergency. In such a situation the defendant cannot be held liable for any error in judgment on his part in any such sudden emergency if you believe that he exercised such judgment as an ordinarily prudent person would have exercised in the same or similar circumstances."

time to take effective action to avoid it. We are of opinion, however, that the jury should have been allowed to consider whether there was an emergency; whether Wood's inattention created the emergency, if one existed, or whether the unsignalled movement of the station wagon brought it about; and whether Wood failed to react to the movement onto the pavement as soon as a reasonably prudent person would have under the same or similar circumstances. *See Cowles* v. *Zahn, supra; Baxley* v. *Fischer,* 204 Va. 792, 796, 134 S.E.2d 291, 294 (1964); *Twyman* v. *Adkins,* 168 Va. 456, 467, 191 S.E. 615, 620 (1937).

Accordingly, there being no merit in other claims of jury misdirection urged by the bus company and Wood, we will reverse the judgment, set aside the entire verdict and remand the case for a new trial as to all three defendants.

*Reversed and remanded.*