# LOUELLA HOWELL, ADMINISTRATRIX, ETC.

## V.

# ROBIN A. CAHOON

Record No. 850949

September 23, 1988

Present: All the Justices

4

*Glenn B. McClanan* for appellant.
*Paul D. Fraim (Heilig, McHenry, Fraim & Lollar*, on brief),
for appellee.

CARRICO, C.J., delivered the opinion of the Court.

In this wrongful death case, the sole assignment of error concerning the question of liability involves the trial court's action in granting a defense instruction on sudden emergency. Finding the court's action erroneous, we will reverse.

On November 9, 1984, Edward Allen Howell was killed while riding as a passenger in a pickup truck operated by Robin A. Cahoon. On January 2, 1985, Howell's mother, acting as administratrix of his estate, filed a motion for judgment against Cahoon seeking compensatory and punitive damages. On August 27, 1985, a jury trial resulted in a verdict in favor of Cahoon. The trial court entered judgment on the verdict, and the administratrix has appealed.

At the time in question, Cahoon was operating his pickup truck in a southerly direction on Princess Anne Road through an area south of Pungo in the City of Virginia Beach. In this area, Prin-

cess Anne is a winding, two-lane road, with one lane for north-bound traffic and one for southbound. The posted speed limit was 55 miles per hour. Cahoon was familiar with the road, having driven it "around a hundred" times.

At a point south of Creeds Park, Cahoon got behind a car oper-ated by Timothy J. DePew. Cahoon followed DePew through a series of curves before reaching "a straightaway." As "[s]oon as the passing zone opened up," Cahoon pulled into the left lane, but when he accelerated, DePew also accelerated. Then, when Cahoon slowed down, DePew also slowed down.

Deciding DePew was finally "going to let [him] pass," Cahoon accelerated again, mindful of a curve "three or four hundred yards down on the right." When Cahoon reached the end of the "legal passing zone," he looked to his right to make sure he could "pull back in [the] other lane" but saw that DePew was "still right beside [him]." Cahoon "looked back up," saw a pickup truck coming around the curve from the opposite direction, and immediately turned to his left off the side of the road. The oncom-ing pickup truck, operated by Richard Twiford, turned to its right off the same side of the road, and the two vehicles collided head-on. The passenger, Howell, was pronounced dead at the scene.

On appeal, Howell's administratrix contends that the trial court erred in granting an instruction on sudden emergency because the evidence showed Cahoon was not without fault in creating the emergency upon which his defense was based. On the other hand, Cahoon contends that the court's action was entirely proper.

Quoting from *Carolina Coach Company* v. *Starchia*, 219 Va. 135, 244 S.E.2d 788 (1978), Cahoon argues that "when the evi-dence is in conflict or when diverse inferences may be properly drawn from the evidence, it is for the jury to say (1) whether defendant was confronted with an emergency; (2) whether any such emergency was created by defendant's own negligence; and (3) whether, after creation of the emergency, defendant acted as an ordinarily prudent person under the circumstances." *Id.* at 141, 244 S.E.2d at 792. *Starchia*, however, is inapposite.

Rather, we think the apposite decision is *Thibodeau* v. *Vandermark*, 234 Va. 15, 360 S.E.2d 171 (1987), which was de-cided after the present case was disposed of below. In *Thibodeau*, we said that, "as with questions of negligence, contributory negli-gence, and proximate cause generally, if reasonable persons could not disagree on the facts and the inferences which may be drawn

therefrom, the question whether a party's negligence creates a sudden emergency becomes a matter for decision by the court." *Id.* at 18, 360 S.E.2d at 173. We said further that "[n]egligence which will disentitle a party to an instruction on sudden emergency need not be the sole cause of the emergency." *Id.*

There are no conflicts in the operative facts in this case, and the evidence does not permit the drawing of diverse inferences. From undisputed testimony, including Cahoon's own testimony, it appears without question that the "legal passing zone" extended "two hundred yards or so, maybe more," and that from "the point [where] the illegal passing zone began to the point where the impact occurred" was another 420 feet. Cahoon admitted he pulled out to pass DePew "[a]s soon as the passing zone opened up." Hence, Cahoon had at least 1,020 feet, or more than the length of three football fields, in which to either complete his passing of DePew or to apply his brakes and fall in behind the DePew vehicle.

Yet, incredibly, Cahoon took neither action. He insisted throughout his testimony that his speed never exceeded 50 miles per hour during the whole time his pickup truck remained in the left lane, and, if this was so, it is obvious that DePew's speed did not exceed the same figure. Cahoon failed to explain, however, why he did not increase his speed to the legal limit of 55 in order to pass DePew, a simple action that might well have averted the tragic consequences which ensued. Cahoon did try to explain why he never applied his brakes during the course of his trip down the left side of the road, but the explanation consisted of the absurd assertion that he "never had the opportunity to apply them."

Cahoon stresses the point, however, that a motorist confronted with a sudden emergency is not guilty of negligence if he makes such a choice to avoid an accident as would be made by a person of ordinary prudence under similar circumstances, even though the choice may not be the wisest one. The emergency he confronted, Cahoon says, was created by DePew's action in blocking his return to the right side of the road. Hence, Cahoon maintains, he cannot be held guilty of negligence because he chose to continue in the left lane and ultimately to run off the left side of the road rather than apply his brakes and pull in behind the DePew vehicle. The latter option was one he could have taken, Cahoon admits, but he insists the option he chose was one a person of ordinary prudence would also have chosen.

The difficulty with this argument is that it misconceives what constitutes the emergency in this case. The only emergency that ever existed in a legal sense arose when Twiford rounded the curve in the lane of travel occupied by Cahoon. But before this emergency arose, Cahoon had already failed in his duty to complete his passing of DePew, or to apply his brakes and pull in behind the DePew vehicle, while still within the "legal passing zone." Instead, Cahoon chose to stay in the left lane beyond the passing zone and to proceed down the wrong side of the road approaching a known curve, conduct which clearly constitutes negligence.*

■ We think reasonable persons could not differ on the proposition that Cahoon's negligent conduct created, at least in part, the sudden emergency upon which he based his defense. Accordingly, it was error for the trial court to grant the instruction on sudden emergency.

This error requires reversal and remand. Because, upon remand, the administratrix may attempt to introduce evidence of damages which the trial court rejected at the earlier trial, we will decide whether the evidence is admissible.

The administratrix proffered evidence of declarations made by the deceased, Edward Allen Howell, an eighteen-year-old high school graduate, which indicated he planned to become an architect and thereafter to send his younger, fatherless brother to medical school and to provide his widowed mother a new home. The trial court rejected the proffered evidence on the ground, *inter alia*, that it was too speculative.

The administratrix contends that the evidence was admissible under Code § 8.01-52. This Code section provides that in an action for wrongful death, the court or jury "may award such damages as to it may seem fair and just." The section provides further that the verdict or judgment "shall include, but may not be limited to, damages for . . . [c]ompensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent."

---

* Cahoon cites *Howe* v. *Jones*, 162 Va. 442, 174 S.E. 764 (1934), and *Hamilton* v. *Glemming*, 187 Va. 309, 46 S.E.2d 438 (1948), for the propositon that it is not always negligence for a person to drive on the wrong side of the road. We have no quarrel with this proposition, but its application is inappropriate here because it presupposes that the person's initial *and* continued presence on the wrong side of the road is without negligence on his part.

 While the language of Code § 8.01-52 is broad, damages sought thereunder must be proved with reasonable certainty, and evidence which is too speculative is inadmissible. *Cassady* v. *Martin*, 220 Va. 1093, 1100, 266 S.E.2d 104, 108 (1980). Left entirely to speculation in this case were the questions whether Howell would have become an architect, whether he would have been sufficiently successful financially to purchase his mother a home and to send his brother to medical school, and whether the brother would have been admitted to medical school in the first place. This left too much to speculation. Hence, the trial court did not err in rejecting the proffered evidence, and if the evidence is offered upon remand, the trial court should reject it again.

*Reversed and remanded.*

COMPTON, J., dissenting in part.

The facts of this case present a classic jury issue on sudden emergency. Therefore, I disagree with the majority's conclusion that Cahoon was guilty of negligence as a matter of law in creating the emergency.

In deciding that Cahoon should not be accorded the benefit of the sudden emergency doctrine, the Court sends the following message: a motorist should avoid lawfully overtaking another vehicle in a passing zone because, if trapped in the passing lane by movement of the overtaken vehicle, the passing motorist will be adjudged guilty of negligence as a matter of law when confronted with an oncoming vehicle.

One of the majority's complaints with Cahoon's driving is that Cahoon did not explain to the majority's satisfaction why he never applied his brakes during the course of his trip down the left side of the road. The Court labels "absurd" Cahoon's explanation that he "never had the opportunity to apply them." I submit that braking in a passing lane while travelling 50 miles per hour in an attempt to swerve in behind an overtaken vehicle, which is travelling at erratic speeds, is a hazardous maneuver at best. The usual split-second reaction of any reasonable motorist is to make the effort to overtake and pass. In any event, however, the judgment whether Cahoon should have aborted the passing, accelerated, or maintained his speed anticipating that DePew would let him past,

is one the jury should make because reasonable persons certainly may differ on that question.

I likewise disagree with the majority's assertion that the "only emergency that ever existed in a legal sense arose when Twiford rounded the curve in the lane of travel occupied by Cahoon." The emergency situation arose when DePew, either intentionally or accidentally, prevented Cahoon from completing his passing movement which, the majority recognizes, was begun in a lawful manner. At any rate, however, that question also properly was for the jury.

Therefore, I believe the jury correctly was permitted to decide whether Cahoon was confronted with an emergency, whether it was created by his own negligence, and whether, given all the facts, he acted reasonably under the circumstances. Thus, agreeing with the Court on the damage question, I would affirm the judgment below.