## Wanda Simons Bentley, et al.

### v.

## Bryan Edward Felts

Record No. 931063

June 10, 1994

Present: All the Justices

118

*Robert I. Asbury*, for appellants.
*Thomas G. Hodges (Hodges & Campbell*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

This case involves an automobile accident that occurred after a car driven by Bryan Edward Felts failed to stop at a stop sign controlling an intersection. To avoid colliding with Felts's car in the intersection, Wanda Simons Bentley swerved her car and ran into a guard rail. The resulting impact severely injured Bentley and her passenger, Polly Breedlove Dunford.

Bentley and Dunford each sued Felts, alleging that he was negligent and seeking damages for their personal injuries. The cases were consolidated for trial and for this appeal.

The uncontradicted evidence showed the following. The engine of the car Felts was driving inexplicably stalled,* thereby causing a loss of power to the power-assisted brakes. The engine stalled as Felts was driving midway across a 90-foot long bridge that ended 39 feet before an intersection.

Felts testified that, although he pressed down on the brakes, the car did not stop until it had rolled about two to three feet into the

---

* The evidence indicated that there was nothing wrong with the engine because, after the accident (1) Felts was able to restart the engine, and (2) no repairs were made to the engine.

intersection. Consequently, Felts failed to stop at the stop sign and failed to yield the right-of-way to Bentley. Although Bentley saw Felts's car as it approached the intersection from the bridge, Felts did not see Bentley's car until his car was in the intersection.

Felts defended the case on two grounds. First, he argued that he was presented with a sudden emergency when the car's engine stalled. Felts asserted that his response to that emergency did not constitute actionable negligence, but was the response of a reasonable person under the circumstances. Second, Felts charged that Bentley was contributorally negligent because, although she saw Felts's car as it was coming off the bridge and approaching the intersection, she did not exercise ordinary care to avoid colliding with the guard rail.

The jury returned a verdict for Felts and the trial court entered judgment on that verdict. The plaintiffs appeal from the trial court's denial of their motion to set aside the verdict.

The plaintiffs assign the following three errors. First, they complain that the trial court erred in denying their consolidated motion to strike Felts's evidence and to enter partial summary judgment on liability because Felts's failure to stop at the stop sign and yield the right-of-way constituted negligence as a matter of law. Second, they argue that the trial court improperly denied a jury instruction which would have instructed the jury that Felts was guilty of negligence *per se* because he violated his statutory duty to stop and to yield the right-of-way. Finally, they maintain that the jury should not have been instructed on the sudden emergency doctrine because the evidence did not support that instruction. We will consider these issues in order.

■ Code § 46.2-821 provides that a driver approaching an intersection controlled by a stop sign has a duty to stop at a point from which he can see traffic approaching on the intersecting road and to yield the right-of-way to any vehicle approaching on the intersecting road. Violation of a traffic statute constitutes negligence, but imposition of liability depends on whether that negligence was a proximate cause of the accident. *Beasley v. Bosschermuller*, 206 Va. 360, 365-66, 143 S.E.2d 881, 886 (1965). Proximate cause is generally a question of fact for the jury. *Id.* at 365, 143 S.E.2d at 886.

■ When the plaintiffs made their motion to strike, the trial court was required to view the evidence in the light most favorable to the non-moving party, Felts. Applying that standard to the evi-

dence, reasonable minds could differ as to the proximate cause of the collision with the guard rail: Felts's failure to stop at the intersection and yield the right-of-way; the failure of Felts's car's engine and Felts's actions in response; or Bentley's actions after seeing Felts's car. Because the evidence could support alternative factual findings as to the cause of Bentley's collision with the guard rail, the trial court correctly denied the motion to strike and submitted the matter to the jury. *Carolina Coach Co. v. Starchia*, 219 Va. 135, 140, 244 S.E.2d 788, 791 (1978).

Next, we find that the trial court did not err in refusing a jury instruction which would have told the jury that a failure to stop and to yield the right-of-way was negligence *per se*. This instruction was repetitive of Instruction Number 3 given by the trial court.

Finally, we consider whether the trial court erred in granting a jury instruction on sudden emergency. The common-law doctrine of sudden emergency relieves a person from liability if, without prior negligence on his part, he is faced with a sudden emergency and acts as an ordinarily prudent person would act under the circumstances. *Id.* at 141, 244 S.E.2d at 792. The defense of sudden emergency becomes a jury issue "when the evidence is in conflict or when diverse inferences may be properly drawn from the evidence" as to (1) whether an emergency existed, (2) whether the emergency was created by the negligence of the person facing the emergency, and (3) whether, after the emergency arose, that person acted as an ordinarily prudent person would have acted under the circumstances. *Id.* However, if reasonable persons could not disagree on the facts and inferences to be drawn from a defendant's claim of sudden emergency, the issue becomes a matter for decision by the court. *Thibodeau v. Vandermark*, 234 Va. 15, 18, 360 S.E.2d 171, 173 (1987).

A sudden emergency presupposes a happening which, in the exercise of reasonable care under the circumstances, cannot be foreseen or expected. *See Garnot v. Johnson*, 239 Va. 81, 86, 387 S.E.2d 473, 476 (1990) (sudden emergency instruction improper where vehicle in front of defendant stopped suddenly on highway). Automobile engines do occasionally cut off without warning, thereby requiring the operators to use increased brake force to stop cars equipped with power-assisted brakes. Accordingly, automobile operators should anticipate this eventuality and be prepared to use increased force on the brakes. Thus, Felts's loss of

power-assisted braking was not a sudden emergency as we have defined and applied that term.

■ Further, we have indicated that if the person facing an emergency contributed to its creation, that person is not entitled to an instruction on that issue. *Thibodeau*, 234 Va. at 18, 360 S.E.2d at 173. Unlike *Cook v. Basnight*, 207 Va. 491, 151 S.E.2d 408 (1966), in which there was a complete brake failure and a sudden emergency instruction was appropriate, Felts was faced only with a loss of power assistance in braking his car. Indeed, Felts admitted on cross-examination that he simply did not apply sufficient force to stop the car. And, on redirect examination, in response to his counsel's question whether he "mashed on the brakes hard," Felts said "I was mashing on them but I'm not for sure if I mashed them hard enough." The only inference to be drawn from this testimony is that Felts could have stopped the car before entering the intersection had he used sufficient force.

Thus, any emergency claimed by Felts occurred only because of the combination of the loss of power assistance in braking *and* his failure to use the additional force required to stop his vehicle. Because reasonable persons could not disagree that Felts's negligence contributed to the creation of the alleged emergency, Felts cannot rely on the defense of sudden emergency. *Thibodeau*, 234 Va. at 18, 360 S.E.2d at 173. Accordingly, the court erred in granting an instruction on that issue.

For these reasons, the judgment of the trial court will be reversed and the case will be remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE LACY, with whom JUSTICE COMPTON and JUSTICE KEENAN join, dissenting in part.

I disagree with the majority's conclusion that automobile engines "do occasionally cut off without warning" and, therefore, that the loss of power-assisted brakes was not a sudden emergency.

An emergency is a sudden, unexpected, or unforeseen event that calls for immediate action. *Garnot v. Johnson*, 239 Va. 81, 86, 387 S.E.2d 473, 476 (1990). The majority draws an analogy between *Garnot* and the instant case and concludes that there was

no unforeseen or unexpected event here that constituted a sudden emergency. In *Garnot*, an accident occurred after a vehicle suddenly stopped in front of another vehicle on the highway. This Court held that there was no sudden emergency because "a driver knows, or should know, that a car immediately in front of him may stop suddenly." *Id.* Implicit in the *Garnot* decision is the premise that the operator of a vehicle generally can anticipate another vehicle's stopping and can prevent an emergency by maintaining a safe distance between his vehicle and the vehicle immediately in front of him. However, one cannot conclude by analogy, as the majority does, either that a driver operating a vehicle with power-assisted brakes and steering "knows, or should know" that his engine will shut off or that the driver can take preventive measures to drive in a manner to avert any accident that may ensue when the engine shuts off inadvertently.

First, in my experience, the cut-off of an automobile's engine without any warning does not happen with any frequency and is not in any way similar to the relatively common experience of having a preceding car stop suddenly. It is the frequency of that experience which made the sudden stop in *Garnot* an expected and foreseeable event and, therefore, not a sudden emergency. The cut-off of a car's engine simply is not such a common experience and, therefore, I do not believe it meets the foreseeability test of *Garnot*.

Secondly, in contrast to the sudden stop event in *Garnot*, the fact that cars with power-assisted brakes and steering may shut off occasionally does not imply that such an event can be foreseen or expected in a manner that allows the driver to take actions which would prevent an accident. Therefore, when a car's motor dies without warning, that circumstance should qualify, under *Garnot*, as a sudden emergency.

In this case, when the engine stopped running for unknown reasons, Felts was placed unexpectedly in an unforeseeable situation which called for immediate action. Once the engine stopped, difficulty in maneuvering the car and operating the brakes was expected and foreseeable, but these difficulties were results of the emergency event, and did not constitute the emergency itself.

As to the other elements of the sudden emergency doctrine, there is no suggestion that the engine shut-off was due to any prior negligence by Felts, and the instruction, therefore, would not be precluded on that basis. The remaining question, then, was

whether Felts reacted to the emergency as an ordinary, prudent person would react. While Felts testified on cross-examination that he "probably wasn't pushing [the brakes] hard enough to get the car stopped," he did not testify that he could have stopped before entering the intersection. Possibly, Felts could have taken other actions to avoid entering the intersection, such as steering the car to the shoulder of the road. Whether Felts's reaction to the emergency was reasonable was a question properly submitted to the jury.

Accordingly, because I concur with the remainder of the majority's opinion, I would affirm the judgment of the trial court.