30 F.3d 131
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frank J. STANLEY, Jr., Plaintiff-Appellee,
v.
Shawn W. STANLEY, Defendant-Appellant,
v.
SCHNEIDER NATIONAL CARRIERS, INCORPORATED, Defendant-Appellee,
and
SCHNEIDER NATIONAL, INCORPORATED; Schneider National
Leasing, Incorporated, Defendants.
 Nos. 93-1797, 93-1829.
 United States Court of Appeals, Fourth Circuit.
 Argued April 13, 1994.
Decided July 26, 1994.
 
 1
 Appeals from the United States District Court for the Western District of Virginia, at Abingdon. Glen M. Williams, Senior District Judge. (CA-92-86-1)
 
 
 2
 Jerry Kenneth Jebo, Jebo & Turk, Radford, VA, for Appellants.
 
 
 3
 Jane Siobhan Glenn, Fishwick, Jones & Glenn, Roanoke, VA, for Appellants.
 
 
 4
 David M. Katz, Bluefield, WV, for Appellee.
 
 
 5
 Before MICHAEL, Circuit Judge, and BUTZNER, Senior Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 PER CURIAM
 
 6
 This diversity action arose from an accident on November 6, 1990, involving a pickup driven by the defendant-appellant, Shawn W. Stanley, and a tractor-trailer driven by Thomas Williams, an employee of defendant-cross appellant, Schneider National Carriers, Inc. (Schneider). Shawn Stanley's brother, plaintiff-appellee, Frank J. Stanley, Jr., was a passenger in the pickup. Both Stanleys were injured, Frank more seriously. Frank Stanley sued Shawn Stanley and Schneider in the United States District Court for the Western District of Virginia and won a jury verdict against both. Shawn Stanley appeals the district court's refusal to instruct the jury on the doctrine of "sudden emergency" under Virginia law and seeks a new trial.[1] For the reasons stated below, we affirm.
 
 I.
 
 7
 On the night of the accident Shawn Stanley was driving himself and his brother Frank down I-77 South en route from Mercer County, West Virginia, to Washington, D.C. On I-77 South, approaching its merger with I-81 in Virginia, there is a long and sweeping left curve which begins with a 50 m.p.h. safe speed sign.[2] Following the left curve, there is a short straight stretch and then a curve to the right where the two interstates merge. At the point of merger there are four lanes, but they consolidate into three lanes after 1500 feet. Well before and at the point of merger there are signs and arrows warning that the right lane ends.
 
 
 8
 As the Stanley pickup tried to pass the tractor-trailer close to the merger point of I-77 and I-81, it swerved off the left side of the road and went out of control. The pickup rolled down an embankment, hit a culvert, overturned, and eventually landed on I-81.
 
 
 9
 At trial, Shawn Stanley testified that he was going 60 to 65 m.p.h. and gaining on the Schneider tractor-trailer, which was in the right lane, when he attempted to pass it in the left lane. He said that he was even with or past the trailer's back wheels when it began to move over into the left lane. He said that he did not remember seeing the trailer signal before it moved over. This trial testimony was contradicted by statements Shawn made to Trooper Hampton at the hospital soon after the accident. Trooper Hampton testified that Shawn told him he was going around 70 m.p.h. and had seen the tractor-trailer signal. Trooper Hampton admitted that his notes were not verbatim and that he questioned Shawn while he was being treated for a broken nose and concussion. Shawn testified that he did not remember anything after the accident and, specifically, did not remember making the statements. However, on cross-examination Shawn admitted that he could not really remember how fast he was going, had no reason to believe the trooper invented the statements, and did not deny making them.
 
 
 10
 Frank Stanley testified that Shawn had the pickup under "proper control" and was driving at a "reasonable speed" at the time of the accident. JA 138. Frank also said that he was relaxed and not really paying attention. He said that he looked up and saw the Schneider truck right beside them, moving over into their lane. Sensing immediate danger, Frank shouted a warning to Shawn. Frank does not remember anything after that.
 
 
 11
 The driver of the tractor-trailer, Williams, testified that he was changing to the left lane in anticipation of the right lane ending. He said he checked his mirrors and saw headlights in his left mirror, but he felt they were far enough back for him to safely move over. He claimed he put on his left signal, counted to three, and then looked again as he was making his move left. At that point he saw the Stanley pickup and swerved right to get out of its way.
 
 
 12
 Two other witnesses in a van behind the pickup and the tractor-trailer saw the accident. The driver of the van, Smith, testified that he had his cruise control set on 65 and was in the left lane, having just passed a car, when the pickup driven by Shawn Stanley passed him on the right going "pretty swift." JA 94. At the time Stanley passed Smith, the tractor trailer was about 500 feet ahead in the right lane. Smith said that the Stanley vehicle "cut in front of me pretty sharp ... into the left lane and at that time started around the semi," JA 95, at which point the trailer's signal went on and it began moving left. Smith and his passenger, Elders, both testified that the trailer's signal and move to the left were almost simultaneous. They also both testified that at the point the tractor-trailer made its move, the front end of the pickup had already cleared the back of the tractor-trailer.
 
 
 13
 The district court refused to give a "sudden emergency" jury instruction requested by Shawn Stanley.[3] The jury, after finding both Shawn Stanley and Schneider negligent, awarded Frank Stanley $100,000 in damages.
 
 II.
 
 14
 Under Virginia law a "sudden emergency" instruction is warranted when the defendant, without prior negligence on his or her part, was confronted with a "sudden, unexpected, and unforeseen occurrence or happening that calls for immediate action." Chodorov v. Eley, 391 S.E.2d 68, 70 (Va.1990). In such an event, if the defendant acted as an ordinarily prudent person would have acted under the same or similar circumstances, he or she is excused from liability. Id. Ordinarily, whether a defendant's prior negligence will preclude an instruction on sudden emergency is a jury question. Thibodeau v. Vandermark, 360 S.E.2d 171, 173 (Va.1987). However, "if reasonable persons could not disagree on the facts and inferences which may be drawn therefrom, the question whether a party's negligence creates a sudden emergency becomes a matter for decision by the court." Id.
 
 
 15
 According to Virginia case law, a sudden emergency is not created by foreseeable driving events such as the abrupt stop of a vehicle ahead. In Chodorov, supra, the Virginia Supreme Court reversed the giving of a sudden emergency instruction when the defendant rear-ended a stopped car. The defendant was driving through the Hampton Roads Bridge-Tunnel at about 55 m.p.h. only six to seven feet behind the car in front of him. When the defendant emerged from the tunnel, he was momentarily blinded by the sun and was unable to see that traffic was stopped ahead. By the time he regained his vision and applied his brakes, it was too late to avoid hitting the car in front of him. Chodorov, 391 S.E.2d at 69. The court held that because it is foreseeable that cars ahead in a line of traffic may stop precipitously, a sudden stop is " 'not an unexpected or unforeseen occurrence as contemplated by the sudden emergency doctrine.' " Id. at 70 (quoting Garnot v. Johnson, 387 S.E.2d 473, 476 (Va.1990)).
 
 
 16
 Virginia cases also hold that if a defendant's negligence indisputably contributes to the creation of the emergency, the defendant is precluded from receiving a sudden emergency instruction. In Thibodeau, supra, the defendant was speeding one rainy afternoon when, as he approached a dangerous curve, his accelerator stuck due to a broken spring. The trial court gave a sudden emergency instruction, and the jury returned a verdict for the defendant. On appeal the defendant argued (i) that it was a jury question whether his allegedly negligent actions or the stuck accelerator were to blame for the accident and (ii) that because he was unaware of any problem with the accelerator prior to the accident, a jury could have found he was not to blame for creating the emergency. Id. at 173. However, the Virginia Supreme Court disagreed and reversed, finding that "reasonable persons could not disagree that the defendant's negligence in speeding on a wet road approaching a known curve created, at least in part, the sudden emergency upon which he relies to excuse his conduct." Id.; see also Howell v. Cahoon, 372 S.E.2d 363, 364-65 (Va.1988) (sudden emergency instruction improper because the emergency was created by the defendant's negligent failure to either speed up or brake when the car he was attempting to pass would not let him by); Lenday v. Sorbito, 178 S.E.2d 532, 534 (Va.1971) (instruction improper because the defendant's failure to use ordinary care in keeping a proper lookout while passing created the emergency).
 
 
 17
 Shawn Stanley argues that he was confronted with a sudden and unexpected emergency. He points to Frank Stanley's sense of imminent danger and warning, to his own testimony that he never saw the tractor-trailer signal, and to Smith's and Elders's testimony that the trailer simultaneously signaled and began to move left. He also contends that the evidence as to his negligence is in dispute and subject to differing inferences. Therefore, he argues that the application of the sudden emergency doctrine was a matter for the jury.[4] Frank Stanley and Schneider counter that there was no "emergency" as contemplated by the doctrine, but assuming arguendo there was an emergency, the uncontroverted evidence (Shawn Stanley's admission to the trooper, Shawn's ultimate lack of recollection, and the testimony of Smith and Elders) establishes that Shawn's negligence contributed to the creation of that emergency.
 
 
 18
 We conclude that the district court did not err in refusing to instruct the jury on sudden emergency. First, we do not think there was a "sudden emergency" as that term is interpreted under Virginia law. It is hardly unexpected or unforeseen that another vehicle may switch lanes at any time on a highway, especially when a convergence of interstates and subsequent lane drop-off is impending. Here the imminent merger of the interstates and consolidation of lanes was well marked, and Shawn Stanley testified that he was familiar with the layout of the road. Yet he barrelled ahead, speeding and passing other vehicles. Second, even assuming a sudden emergency, we believe that reasonable persons could not disagree that Shawn Stanley's speeding, his cutting in and out of traffic, and his attempting to pass the tractor-trailer on a hazardous stretch of curving and merging interstate highway demonstrate negligence contributing at least in part to the creation of any sudden emergency. See Thibodeau, 360 S.E.2d at 173.
 
 
 19
 The district court properly refused the sudden emergency instruction.
 
 III.
 
 20
 The judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 In a cross appeal, Schneider contends that if a new trial is granted, it must be granted for both defendants. Because we affirm the district court's refusal to give the "sudden emergency" instruction, we do not address the cross appeal
 
 
 [2]
 The usual posted speed limit on Interstate 77 in Virginia is 65 miles per hour
 
 
 [3]
 Shawn Stanley requested the following "sudden emergency" instruction:
 If the jury believes from the evidence that the defendant, Shawn Stanley, without negligence on his part, was confronted with a sudden emergency, then Shawn Stanley was not required to exercise the same good judgment in such sudden emergency which would have been required of him in the absence of such sudden emergency, and in such a situation the defendant, Shawn Stanley, cannot be held liable for any error in judgment on his part in any such sudden emergency if you believe, from the evidence, that he exercised such judgment as an ordinarily prudent person would have exercised in the same or similar circumstances.
 JA 235-36.
 
 
 [4]
 Shawn Stanley cites Carolina Coach Co. v. Starchia, 244 S.E.2d 788 (Va.1978), in support of his position. In Carolina Coach, a bus collided with a car that, according to the bus driver, suddenly pulled onto the highway from the shoulder without signalling. The trial court refused to give a sudden emergency instruction, and the Virginia Supreme Court reversed. We think Carolina Coach is distinguishable. When a car stopped on the shoulder makes a sudden, unsignalled move onto a highway, that presents a less foreseeable and more surprising circumstance than changing lanes in anticipation of a highway merger and lane consolidation. Further, in Carolina Coach (unlike here) there was a factual dispute about whether the bus driver was negligent in creating any emergency. Id. at 792. Finally, we believe that more recent Virginia precedents discussed above dictate the result we reach today