# Richmond

SUSAN MARY DANIELS v. C. I. WHITTEN TRANSFER COMPANY, A CORPORATION, AND THOMAS E. NASH.

November 22, 1954.

Record No. 4263.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Allen, Allen, Allen & Allen* and *Leith S. Bremner,* for the plaintiff in error.

*Moncure & Cabell,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Susan Mary Daniels instituted this action by notice of motion for judgment against C. I. Whitten Transfer Company, a corporation, and Thomas E. Nash to recover damages received by her when an automobile in which she was riding as a passenger came into collision with a tractor-trailer truck operated and controlled by the defendants. The case was tried by a jury and a verdict was returned for the defendants. A motion by the plaintiff to set aside the verdict was overruled and judgment was entered in accordance with the verdict.

There are three assignments of error. Two of them relate to the granting of certain instructions, and the third is to the refusal of the court to set aside the verdict of the jury upon the ground that it was contrary to the law and the evidence and without evidence to support it.

The evidence is strongly in conflict as to who or what caused the collision between the two vehicles. It presents the issues whether a sudden emergency existed, and whether the driver of the tractor-trailer truck was guilty of such negligence as constituted a proximate cause of the collision. Since the verdict of the jury resolved the conflicts in favor of the defendants, the evidence must be stated in the light most favorable to them.

The accident happened about midnight May 12th-13th, 1952, on a straight stretch of Route 250, about five or six miles west of Richmond. The road is a three-lane highway, running east and west, with a paved surface thirty feet wide, each of the lanes being approximately ten feet in width.

At the point of the accident there is a slight rise in the road, the grade leading to it being less than two feet for one hundred feet of distance. The road was dry, the weather clear, and the night dark. The general surroundings at the scene of the accident were shown by the testimony and by numerous photographs introduced as exhibits.

The plaintiff was a passenger in a station wagon automobile operated by Edward Dial, which was being driven in a westerly direction. Thomas E. Nash, alone in a tractor-trailer truck, was driving east. Both vehicles were proceeding at a rate between forty and fifty miles per hour, and their lights were on.

After the collision, the station wagon automobile was in the westbound driving lane of the three-lane highway headed eastwardly in the direction of Richmond. The tractor-trailer truck was at a forty-five degree angle across the highway and the northern edge thereof, headed in a northeastwardly direction. The overall length of the tractor and trailer was forty-four feet and eleven inches, and as a complete unit it blocked the westbound lane, the center lane and a part of the eastbound lane of the highway. Some debris, consisting of dry dirt and grease, described as "some slime off the highway which collects up under fenders" was found in the center lane, somewhat closer to its northerly than its southerly boundary line. The front end of the station wagon was so badly damaged that it could not be definitely ascertained which side had been first hit. The front end of the tractor appeared to have been hit at the right front wheel. The right front tires of both the station wagon and the tractor were flat. The station wagon and the tractor were both damaged beyond repair.

On the roadway was a skid mark beginning in the eastbound lane, which continued in that lane for a distance of ten feet, and then extended across the highway to the left rear wheel of the stopped trailer, a total distance variously estimated to be from sixty to seventy-four feet. The photographs show three sets of gouged marks in the paved surface,

one in the center lane, close to its northerly dividing line, one in the westbound lane to the right side of the stopped tractor-trailer truck, and one five feet west of and parallel to the last mentioned mark, running from near the center of the westbound lane over to and on the shoulder of the highway, beneath the stopped trailer. No one was able to definitely determine what caused these marks, and neither Dial, Nash nor the plaintiff, the only eye-witnesses who testified as to how and why the collision occurred, was able to definitely fix the actual point where the vehicles collided.

Nash testified that he left McAllister, Oklahoma, at four o'clock on the afternoon of May 7th, 1952. His truck was loaded with explosives to be delivered to Portsmouth, Virginia, prior to May 15th, 1952. He arrived in Lexington, Virginia, on May 13th, where he had a rest period of eight hours. He there examined and serviced his equipment, finding it in prime condition, and continued his trip at seven o'clock p. m. He next stopped at Waynesboro a short period for refreshments, and made no other stop until he arrived at the point of the accident. He had been engaged in driving a truck in the shipping business for seven years. He had owned the tractor-trailer for seventeen months, and it was then under lease to the C. I. Whitten Transfer Company and operated in its shipping business. The truck had a total mileage of around 200,000 miles, of which Nash had driven 150,000. Its equipment and the manner of its operation met the requirements of the Interstate Commerce Commission. At the time of the accident, its load of explosives weighed 30,000 pounds and its equipment approximately 21,300 pounds.

During the progress of this trip Nash had driven over the Ozark, Alleghany, North and Blue Ridge Mountains. His vehicle worked perfectly during the whole trip; and at no time did it pull towards the left, or did he have any trouble in steering or braking it. He said that as he approached the point of the accident, travelling at between forty-five and fifty miles per hour in his right-hand lane of traffic, he ob-

served the car driven by Dial approach in its proper lane of travel, that is, the right-hand lane, bound west; that at a distance which he could not actually determine, the Dial car, without any signal or apparent reason, started turning to its left, entered the center lane and proceeded diagonally across the road; and that as Dial's car, proceeding as above, reached the center of the middle lane, he, Nash, applied his brakes and swerved to the left.

Asked why he did not go to the right, Nash replied: "Well, I could not go to the right because on the right it is a building there, I think it is an antique shop or something, it would not have been room to go to the right, and the shoulder was too narrow to get off on. I naturally went to the left, and that is just where the accident took place it looked to me it looked like, right the center of the road."

There was other evidence that the shoulder of the road was narrow, and that there was a slight adjoining ditch with some trees and telephone poles off to the side of the highway.

Asked if he could tell in what manner Dial's car came across the road towards him, Nash replied: "It was pretty abrupt it looked to me like. He was on his side like I said, and then just right on me practically before it ever cut." Asked what he did, he replied, "Well, something like that happens so fast, just like snapping your finger almost. Your first instinct at any time something like that happens to me is to dodge. Naturally I put my brakes on first and just swerved to the left." He said that he was not tired at the time; and that "I was pretty much awake. After you have rested and cleaned up and everything and have not driven but 135 or 140 miles it is no reason for you to be tired." He was unable to estimate the speed of the station wagon, but thought it was "going pretty fast."

It appears from the evidence of plaintiff's witnesses that, on the evening of May 13th, she was present with several persons at the place of business of a Mr. Narron. Dial carried Mrs. Daniels there, where he met Carl Brown, with whom he contemplated going into business. Alcoholic

drinks were served, but Dial said he did not remember drinking anything. The gathering turned into a "rather wild party." Brown got drunk, became boisterous and argumentative, and Dial undertook to take him home in an automobile. Mrs. Daniels volunteered to go along with Dial for the purpose of assisting in the care of Brown. They drove the Mercury station wagon here involved which was the property of the wife of Brown. The three of them sat in the front seat of the car, Dial at the wheel, Mrs. Daniels next to him, and Brown on her right. On their way they ran out of gasoline. Someone brought them a small supply, and when they got to a service station, Brown got into an argument with the station attendant. The three of them then reentered the automobile and continued the trip westwardly. When Brown began to go to sleep, and his head was swaying and falling forward, Dial "turned" to Mrs. Daniels and said: "Sue, would you put Carl's head on your shoulder?" Mrs. Daniels did this, and shortly thereafter she said she saw the lights of the tractor-trailer truck "come from nowhere across" the road and the collision occurred. She remembered seeing the side of the "van," and that it was a "silver thing;" but didn't remember anything after that, not even the sound of the crash. She thought the station wagon was in its proper lane on the right-hand side of the road, and that the tractor-trailer truck came across the road into her lane.

Dial testified that as he approached the scene of the accident, driving in his proper lane and within the lawful speed limit, a pair of lights "suddenly swerved" across the road and the truck "loomed up" in front of him; that he "endeavored to swerve" away from it, but did not have the "slightest idea how far he got to his left;" and that the collision happened "so fast that there was not time to do anything."

Notwithstanding the evidence of Nash that his tractor-trailer truck was in good mechanical condition and that its brakes operated properly, several witnesses for the plaintiff

testified that they found, after the collision, defects in its wheels and braking mechanism, which would interfere with steering the vehicle, causing it to have a tendency to swerve to the left upon the application of its brakes.

A witness for the plaintiff testified that Nash stopped at his place of business a short distance west of the scene of the accident for a cup of coffee, and that he appeared to be sleepy, tired and worn out. On the other hand, Nash stated unequivocally that he did not make any stops after he left Waynesboro, many miles farther to the west, and that he was fully awake and observant of the circumstances.

Plaintiff contends that the evidence of mechanical defects of Nash's vehicle, or drowsiness on the part of Nash himself, or both, furnish the real explanation of why he turned to his left. She also contends that the marks on the road, other physical facts and the location of the vehicles after the accident, show both that Nash was the first to turn his vehicle to the left, and that the collision occurred on Dial's side of the road. It is sufficient to say that the evidence of the plaintiff in each of these particulars is contradicted by that of the defendants.

The evidence presented a factual situation for the determination of the jury. There is nothing in the physical facts which is irreconcilable or at variance with the evidence of the defendants. The jury had the opportunity to observe the attitude and demeanor of the several witnesses, the duty to weigh the effect of their testimony, and the right to evaluate the significance of the physical facts and the exhibits offered in evidence (*Clayton* v. *Taylor*, 193 Va. 555, 560, 69 S. E. (2d) 424) and they have accepted the testimony of the defendant, Nash.

Nash's testimony that Dial's car, without any apparent reason, suddenly cut left in front of him, and that he (Nash) had no alternative except to turn left, if true, justified his action, and the collision was not due to his fault. His explanation, under the circumstances in which the drivers of the two vehicles found themselves, is just as reasonable if

not more so than the evidence of the plaintiff. We find nothing in the record which requires us to say that it is not true or that it is incredible.

"To be incredible, evidence must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Burke* v. *Scott*, 192 Va. 16, 23, 63 S. E. (2d) 740.

The facts here distinguish this case from *Noland* v. *Fowler*, 179 Va. 19, 18 S. E. (2d) 251, and *Hinton* v. *Gallagher*, 190 Va. 421, 57 S. E. (2d) 131.

Upon the motion to set aside the verdict, the learned trial judge, in a short written opinion, briefly reviewed the evidence and the conflicts therein. He noted that counsel for the plaintiff argued before the jury that it was physically impossible for the accident to have happened as Nash testified, and that the negligence of Nash was the cause of the accident. He was of the opinion that Nash gave a reasonable explanation as to the sudden emergency in which he was placed, that the jury had the right to accept it, and having done so, their verdict should not be disturbed. With this we agree.

The controlling issues were submitted to the jury on elaborate instructions outlining the theories of the respective parties. Only two are in question here, instructions D and E.

Instruction D reads as follows:

"The Court instructs the Jury:

"That where one, without fault on his part, is suddenly placed in a position of imminent peril, the law does not require of him, in attempting to escape the peril with which he is confronted, to exercise all presence of mind and care of a reasonably prudent person under ordinary circumstances. It makes allowances for the circumstances under which he is forced to act and the effect of the real or apparent or pending peril on his mind and on his nervous and muscular reaction. If he acts under such circumstances as a reasonably prudent person might have acted under the same circumstances, he is not responsible, even though had he done some-

thing else, the injury would have been averted, or even if his acts in attempting to avert the peril created a more dangerous situation and actually caused the accident.

"The Court further instructs the Jury, that if they believe from all of the evidence in this case that defendant's truck driver, Nash, without fault on his part, and in an effort to avoid a collision with the car driven by Dial, drove to the left side of the center of the highway because of a sudden emergency created by Dial, and that Nash acted as a person of ordinary prudence might have acted under the same circumstances, then in so doing, Nash was not guilty of any negligence even though his choice of action was not the wisest course and actually caused the accident and injuries to the plaintiff, Daniels, and you cannot find a verdict in her favor."

Plaintiff argues that there is no evidence upon which instruction D can be based, and that, in any event, it should have contained a statement that the burden was upon the defendants to prove the emergency claimed.

The evidence we have recited refutes the first ground of her contention, and we find no merit in the second ground.

In *Southern Passenger Motor Lines, Inc. v. Burks*, 187 Va. 53, 46 S. E. (2d) 26, we held that the defense of a sudden emergency may be shown under the plea of the general issue, and that it does not constitute an affirmative defense shifting the burden of proof in the case. Here the evidence of the defendants was merely in refutation of the plaintiff's claim that the collision was proximately due to the negligence of Nash.

We have frequently had occasion to discuss the doctrine of sudden emergency, and have repeatedly held that where the driver of an automobile, without prior negligence on his part, is confronted with a sudden emergency, and acts as an ordinarily prudent person would have done under the same or similar circumstances, he is not guilty of negligence. *Southern Passenger Motor Lines, Inc. v. Burks, supra*; *Virginia Transit Company v. Durham*, 190 Va. 979, 59 S. E.

(2d) 58; *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 60 S. E. (2d) 4; *Hinton* v. *Gallagher, supra.*

See also 38 Am. Jur., Negligence, § 41, pp. 686, 687, and Restatement of the Law of Torts, Vol. 2, page 796.

Virginia Code, 1950, § 46-220, makes it the duty of an operator of an automobile to drive on the right side of the road, and the violation of this statute is evidence of negligence. *MacGregor* v. *Bradshaw*, 193 Va. 787, 798, 71 S. E. (2d) 361. Thus, when the evidence of the plaintiff showed that Nash drove his truck diagonally across the highway to his left, she made out a *prima facie* case of negligence against the defendants. In that situation they were under the necessity of making a reasonable explanation, such an explanation as the jury could accept, showing that what happened was due to something other than the negligence of Nash. Notwithstanding this burden of producing evidence in explanation, the ultimate burden remained on the plaintiff to prove her case, that is, to show by a preponderance of the evidence that her injuries were caused by the negligence of the defendants. *Darden* v. *Murphy*, 176 Va. 511, 11 S. E. (2d) 579; *Southern Passenger Motor Lines, Inc.* v. *Burks, supra*; *Interstate Veneer Co.* v. *Edwards, supra*; *Virginia Transit Co.* v. *Durham, supra.*

Whether or not the plaintiff sustained her burden and whether or not the defendants gave an explanation of such character that reasonable men may differ as to its effect were questions for the jury. *Interstate Veneer Co.* v. *Edwards, supra*, 191 Va. page 114. If their verdict is supported by competent evidence, it is final and conclusive, and cannot be disturbed either by the trial court or by this court. *Gaines* v. *Campbell*, 159 Va. 504, 166 S. E. 704; *Atlantic Greyhound Corp.* v. *Shelton*, 184 Va. 684, 36 S. E. (2d) 625.

Here, it must be noted that instruction D submitted to the jury the factual issue of whether or not Nash was confronted with an emergency and then advised them what was the scope and character of his obligation and duty if

they believed from his testimony that he was in reality placed in an emergency not due to his own fault. As Mr. Justice Miller aptly says in *Virginia Transit Co.* v. *Durham, supra,* (190 Va. page 995):

"If an emergency really existed, then what a reasonable man should or should not have done is in the realm of inference. It is to be ascertained by a fair appraisal of the facts proved and a reasonable consideration of the usual and ordinary reaction of men confronted with similar situations. The composite judgment of a jury in this respect is usually the best means and truest test by which to ascertain and arrive at the reasonable and proper inference to be ultimately drawn."

The first paragraph of instruction D is theoretical and argumentative. It sets out the doctrine of sudden emergency in the language employed by the courts. We do not approve it in that form. The second paragraph correctly states the law and is sufficient standing alone.

Instruction D does not deal with the question of burden of proof; but with the elements which constitute an emergency when one drives out of his proper line of traffic. If the plaintiff had desired an instruction relative to the duty of the defendants to make a reasonable explanation for what they did, she could have requested the court to grant an instruction relating to that question.

Instruction E reads as follows:

"The Court instructs the Jury:

"That if you believe from all of the evidence in this case that Dial, the operator of the car in which plaintiff, Daniels, was riding under all of the facts and circumstances existing at the time, was guilty of any negligence which was the sole proximate cause of the accident and the resulting injuries to plaintiff, you cannot find your verdict for the plaintiff, Daniels."

Plaintiff objected to this instruction "on the ground that there was no evidence upon which the jury could find that negligence on the part of Dial was the sole proximate cause

of the accident, and that negligence on his part, if any, could have only been a contributing cause of the collision." The objection to this instruction presents substantially the same question as that first discussed, that is, whether the verdict was contrary to the law and the evidence and without evidence to support it. What we have heretofore said disposes of this objection, in that we think there was ample evidence to justify granting the instruction. The trial court would have been well advised, however, if it had left out the word "any" which immediately precedes the word "negligence." Its employment, under the circumstances, is supererogatory and unnecessary, but not harmful.

In conclusion, we think the case was fairly submitted to the jury, and that they could well have concluded or inferred that Nash acted as an ordinarily prudent person. The jury had the right to accept or reject the evidence of the plaintiff, or of the defendants, and to evaluate the physical facts and circumstances, and their verdict settles each of the issues involved.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*