COURT OF APPEALS OF VIRGINIA

Present:  Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia


PUBLISHED

SHANNON B. BOYETTE

                                          OPINION BY
v.       Record No. 1278-22-2        JUDGE JUNIUS P. FULTON, III
                                         JANUARY 23, 2024
CARRIE E. SPROUSE


FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
Timothy K. Sanner, Judge

R. Braxton Hill, IV (T. O'Connor Johnson; Merritt Law, PLLC; The
Johnson Injury Firm, on briefs), for appellant.

E. Brandon Ferrell (Kerrigan O'Malley; Carter & Shands, P.C., on
brief), for appellee.


Shannon B. Boyette appeals a decision by the Circuit Court of Goochland County in a

personal injury negligence action against Carrie E. Sprouse arising from a motor vehicle accident.

Over Boyette's objection, the trial court submitted the case to a jury and granted an instruction

Sprouse proposed on the "sudden emergency" doctrine. The jury rendered a verdict for Sprouse.

Boyette now assigns error to the trial court's decisions to grant the jury instruction, and to reject

Boyette's motion to strike Sprouse's evidence. For the following reasons, we affirm the trial

court's judgment.

BACKGROUND

"In reviewing the evidence presented at trial, we view it 'in the light most favorable to

the prevailing party, granting it the benefit of any reasonable inferences.'" *Pergolizzi v.*

*Bowman*, 76 Va. App. 310, 317 n.1 (2022) (quoting *Starr v. Starr*, 70 Va. App. 486, 488 (2019)).

The accident occurred at nighttime on September 29, 2017, as Boyette and his daughter were

passengers in a vehicle driven by Evaki Boyette, his wife at the time. They were in the Boyettes' 2010 Toyota Corolla, driving on Ashland Road towards Ashland, Virginia. The car was equipped with a dashboard video camera that was facing forward and recording throughout the relevant events. Evaki drove, Boyette sat in the front passenger seat, and their daughter sat behind the driver's seat. The roadway was not illuminated by streetlights, but the roadway was dry. As the Boyettes approached the location of the accident, the road was somewhat winding and consisted of two lanes traveling in opposing directions, with a posted speed limit of 45 miles per hour.

Moving at approximately 45 miles per hour, the Boyettes came upon a slight rightward curve in the road, and Evaki noticed two vehicles stopped on the opposite side of the road, both facing toward her. The two vehicles were stopped in the opposing lane, one behind the other. Despite the position of the vehicles, the headlights of both vehicles were visible simultaneously and in Evaki's line of sight due to the curvature of the road. The rear vehicle's high beams were illuminated. As her vehicle entered the turn, faced with the blinding headlights, Evaki decreased her speed to around 40 miles per hour by taking her foot off the accelerator. As she passed the spot where the stopped vehicles were located, a large white dog appeared "suddenly" on the road in front of her, and the Boyettes' car struck the dog. Evaki did not apply the brakes before the impact occurred.

After the impact, the Boyettes' car continued forward in its lane, but slowed from approximately 40 miles per hour to between 5 and 10 miles per hour. Moments later, Carrie Sprouse's car struck the rear end of the Boyettes' vehicle. Evaki later testified at a deposition that she did not remember pressing the brakes between hitting the dog and being hit by Sprouse. When asked whether Evaki had hit the brakes at any point, Shannon Boyette testified, "We somehow went from 45 to approximately [5] miles an hour so I don't know if she broke or not."

Sprouse testified that she had been driving on Ashland Road behind the Boyettes' vehicle for a minute or two before the accident. She was traveling approximately 40 to 45 miles per hour, maintaining a consistent distance behind the Boyettes' car. Sprouse testified that she was unsure of the distance between the two cars but estimated that it was "two car-lengths." On review of the dash cam footage, however, she stated that the time between the Boyettes' car hitting the dog and her own vehicle hitting the Boyettes' car was four seconds. Sprouse testified that she did not believe that she was following too closely or "tailgating" the Boyettes.

As Sprouse approached the spot in the road where the two vehicles were parked on the opposite side of the road, her vision was obscured by the headlights of the two vehicles, and she slowed down by taking her foot off the accelerator. Sprouse testified, "I squinted a little because I couldn't see and I tried to look away from the lights so they weren't blinding me." Then, Sprouse testified, "I got past the bright lights and then I could see the car in front of me and slammed on [the] brakes." Despite applying the brakes, she was unable to stop in time to avoid the collision. Sprouse did not see any hazard lights or brake lights coming from the Boyettes' vehicle before the collision.

At trial, after Sprouse presented her case in defense, Boyette moved to strike Sprouse's evidence, arguing that she had presented insufficient evidence to rebut Boyette's prima facie case of negligence.[1] The trial court denied the motion, finding that the case was appropriate for submission to the jury.

---

[1] Boyette first moved to strike the defense, then, upon a request by the circuit court for clarification, asked for a directed verdict against Sprouse. The trial court refused the latter request because Code § 8.01-378 prohibits trial judges from directing jury verdicts. The trial court noted, however, that Boyette could properly make a motion to strike, which would result in the court's entering a partial summary judgment for Boyette on the issue of liability. The trial court considered and refused that motion as well.

Over Boyette's objection, the trial court also granted the following jury instruction on the "sudden emergency" doctrine:

> Carrie Sprouse contends that she was confronted with a sudden emergency. A sudden emergency is an event or a combination of circumstances that calls for immediate action without giving time for the deliberate exercise of judgment.
>
> If you believe from the evidence that the [sic] Carrie Sprouse, without negligence on her part, was confronted with a sudden emergency and acted as a reasonable person would have acted under the circumstances of this case, she was not negligent.

So instructed, the jury rendered a verdict for Sprouse, and the trial court entered a judgment in accord with the same.

Boyette now appeals, assigning error to the trial court's decisions to grant Sprouse's proposed "sudden emergency" jury instruction and to deny Boyette's motion to strike.[2]

ANALYSIS

I. "Sudden Emergency" Jury Instruction

A. Standard of Review

On review of a trial court's decision to grant proposed jury instructions, this Court's "sole responsibility is to ensure that the law has been clearly stated in the instructions and that they cover all the issues that the evidence fairly raises." *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017) (citing *Swisher v. Swisher*, 223 Va. 499, 503 (1982)). "[A] litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory." *Hancock-Underwood v. Knight*, 277 Va. 127, 130 (2009) (quoting *Schlimmer v.*

---

[2] Boyette also assigns error to several other jury instructions. Boyette, however, failed to include any argument in his briefs relating to those instructions, so they are waived. *See Muhammad v. Commonwealth*, 269 Va. 451, 478 (2005) ("Failure to adequately brief an assignment of error is considered a waiver."); *see also Wroblewski v. Russell*, 63 Va. App. 468, 489 (2014) ("Wife did not present any argument on this issue; therefore, it is waived and will not be considered on appeal." (citing Rule 5A:20(e)))

*Poverty Hunt Club*, 268 Va. 74, 78 (2004)). "The evidence introduced in support of a requested instruction 'must amount to more than a scintilla.'" *Id.* at 131 (quoting *Schlimmer*, 268 Va. at 78). "And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009) (citing *Commonwealth v. Cary*, 271 Va. 87, 91 (2006)). "A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion." *Howsare*, 293 Va. at 443 (citing *Cooper*, 277 Va. at 381).

B. The trial court correctly granted Sprouse's "sudden emergency" jury instruction.

Boyette argues that the trial court's decision to grant the jury instruction on the "sudden emergency" doctrine was erroneous because the Supreme Court of Virginia has found the doctrine inapplicable in negligence cases arising from similar car accidents. Boyette argues that none of the unusual circumstances in this case—e.g., the sudden stop of the Boyettes' car after the collision with the dog or the visual obstruction caused by the stopped cars' headlights—would constitute a "sudden emergency" on its own, so those circumstances cannot constitute a "sudden emergency" when considered together. We disagree.

Under the "sudden emergency" doctrine, when a defendant, "without prior negligence on his part, is confronted with a sudden emergency and acts as an ordinarily prudent person would have done under the same or similar circumstances, he is not guilty of negligence." *Hancock-Underwood*, 277 Va. at 137 (quoting *Vahdat v. Holland*, 274 Va. 417, 421 (2007)). An "emergency within the meaning of the sudden emergency doctrine is a sudden, unexpected and unforeseen happening or condition that calls for immediate action." *Herr v. Wheeler*, 272 Va. 310, 315 (2006). A sudden emergency may involve "a *combination of circumstances* that calls for immediate action without giving time for the deliberate exercise of judgment." *Harrah v. Washington*, 252 Va. 285, 294 (1996) (emphasis added). "[W]here a set of circumstances has

existed and the party has been exposed to them before, the situation is not 'unexpected.'" *Herr*, 272 Va. at 315 (quoting *Harrah*, 252 Va. at 294).

"[O]rdinarily the question of application of the sudden emergency doctrine is for the triers of fact." *Herr*, 272 Va. at 315 (quoting *Cowles v. Zahn*, 206 Va. 743, 746 (1966)). "[W]hen the evidence is in conflict or when diverse inferences may be properly drawn from the evidence," it is for the jury to decide "(1) whether an emergency existed, (2) whether the emergency was created by the negligence of the person facing the emergency, and (3) whether, after the emergency arose, that person acted as an ordinarily prudent person would have acted under the circumstances." *Bentley v. Felts*, 248 Va. 117, 120 (1994) (quoting *Carolina Coach Co. v. Starchia*, 219 Va. 135, 141 (1978)). Therefore, granting a jury instruction on the "sudden emergency" doctrine is appropriate if "[t]here is more than a scintilla of evidence that would have permitted a jury to find that the [defendant] was confronted with an emergency [not] created by the defendant's negligence and that the [defendant] acted as an ordinarily prudent person would have acted under the same or similar circumstances." *Jones v. Ford Motor Co.*, 263 Va. 237, 263 (2002).

Application of the "sudden emergency" doctrine has a caveat, however. Trial courts "must use particular care when determining whether to grant a sudden emergency instruction because . . . it has the tendency to afford a jury 'an easy way of avoiding instead of deciding the issue made by the evidence in the case.'" *Herr*, 272 Va. at 315 (quoting *Harrah*, 252 Va. at 294). For this reason, the Supreme Court has advised that "the grant of a sudden emergency instruction is rarely appropriate." *Hancock-Underwood*, 277 Va. at 137 (quoting *Jones*, 263 Va. at 263); *see also Vahdat*, 274 Va. at 421 n.2. Thus, though it is true that the question of whether the "sudden emergency" doctrine applies is "ordinarily" for the factfinder, and consequently a jury instruction on the doctrine should be granted when there is "more than a scintilla of

evidence" to support it, it is simultaneously true that it is "rarely appropriate" for trial courts to grant such a jury instruction, due to the risk that giving the instruction will unduly influence the jury to conclude that the doctrine applies.[3]

Applying these principles to the evidence presented in this case and viewing the evidence in the light most favorable to Sprouse, we conclude that the trial court did not abuse its discretion by concluding there was more than a scintilla of evidence to support a jury's finding that Sprouse faced a "sudden emergency." In *Cowles v. Zahn*, the Supreme Court of Virginia held that the trial court should have issued a "sudden emergency" jury instruction where the defendant hit the back of the plaintiff's car, which the plaintiff had stopped on the right shoulder of a two-lane road after the car suffered a mechanical malfunction. 206 Va. at 744-47. The accident occurred after dark, and the shoulder of the road was so narrow that the plaintiff could not pull his vehicle entirely off the road. *Id.* Another car had stopped and parked in front of the plaintiff's car. *Id.* A third car traveling the same direction in front of the defendant had veered into the opposing lane to pass plaintiff's car and was doing so at the time the defendant came upon the scene. *Id.* The defendant claimed he was traveling between 50 and 52 miles per hour and could not see the taillights of the plaintiff's car until about 50 feet away, leaving him insufficient time to stop. *Id.* Other witnesses stated they could see the taillights of the car about 500 feet away. *Id.* Because "the evidence was in sharp conflict as to the distance defendant could or should have seen the tail

---

[3] With respect to the evidentiary burden the defendant must meet, the "sudden emergency" doctrine is not an affirmative defense; rather, "when a plaintiff presents a prima facie case of negligence, a defendant, relying on the defense of sudden emergency, must then make 'a reasonable explanation, such an explanation as the jury could accept, showing that what happened was due to something other than the negligence of [the defendant].'" *Vahdat*, 274 Va. at 422 (alteration in original) (quoting *Daniels v. C.I. Whitten Transfer Co.*, 196 Va. 537, 546 (1954)). "[N]otwithstanding this burden of producing evidence in explanation, the ultimate burden remain[s] on the plaintiff to prove [his] case, that is, to show by a preponderance of the evidence that [his] injuries were caused by the negligence of the defendant[]." *Id.* (quoting *Daniels*, 196 Va. at 546).

lights on the stalled [plaintiff's] automobile," the Supreme Court concluded that the questions of whether there was a "sudden emergency" and, if so, whether the defendant's own negligence had created it, should have been submitted to the jury. *Id.* at 747. "Whether defendant's failure to see the [plaintiff's] car sooner was due to lack of visibility on account of the curve, his excessive speed under the circumstances, inattention on his part, or the movements and position of the [third] car," were all issues for the jury, as was the question of "whether he failed to react to the situation ahead as soon as an ordinarily prudent person would have under the same or similar circumstances." *Id.*

In this case, the trial court noted that the evidence relating to the distance by which Sprouse was following the Boyettes was "somewhat in conflict between two car-lengths versus more like four seconds at the time of the collision as shown by the video." The trial court also took note of "the sudden dog movement . . . completely out of the blue apparently which the Defendant was not in a position to view really at all," and "which resulted in not only a collision but the sudden slowing of the front vehicle without any brake lights being displayed." Moreover, all this occurred while Sprouse had to contend with "the presence of unusually blinding headlights." Finally, the trial court noted the cars' "relative lack of speed prior to the accident." In this case, as in *Cowles*, "the evidence was in sharp conflict as to the distance [Sprouse] could or should have seen the tail lights on the . . . [Boyettes'] automobile." *Id.* As in *Cowles*, "[w]hether [Sprouse's] failure to see the [Boyettes'] car sooner was due to lack of visibility . . . , inattention on [her] part, or the movements and position of the [other] car[s]," were jury issues, as was the question of "whether [Sprouse] failed to react to the situation ahead as soon as an ordinarily prudent person would have under the same or similar circumstances." *Id.*

In reaching this conclusion, the Court is mindful that the Supreme Court of Virginia has held that "'a driver knows, or should know, that a car immediately in front of him may stop

- 8 -

suddenly;' thus, such an occurrence is foreseeable and not unexpected." *Chodorov v. Eley*, 239 Va. 528, 530-31 (1990) (quoting *Garnot v. Johnson*, 239 Va. 81, 86 (1990)). Therefore, a car's sudden stop in traffic, considered alone, does not constitute a "sudden emergency." *Garnot*, 239 Va. at 86 (holding there was no "sudden emergency" when the plaintiff, who had been stopped at a red light in front of the defendant, began to drive forward and then stopped again suddenly due to traffic). It does not follow from this holding, however, that a "sudden emergency" cannot exist in any case that a car has suddenly stopped. Rather, there must be more to support a "sudden emergency" finding than *merely* a car's sudden stopping. As the Supreme Court stated in *Garnot*, "such a stopping, *absent evidence of an unforeseen happening*, does not constitute an emergency that would invoke the sudden emergency doctrine." *Id.* (emphasis added).

The trial court correctly concluded in this case that the sudden stop of the Boyettes' vehicle was compounded by the other circumstances of the case to create a "very unusual event." As the trial court explained, "it's the combination . . . of the blinding lights coupled with the sudden occurrence of the dog and its apparent size which resulted in fairly significant slowing apparently of the vehicle in front without any kind of warning from the brake lights being employed" which created a sudden emergency that called for immediate action from Sprouse without giving her time for the deliberate exercise of judgment. Although a car's sudden stopping on the road "in a line of traffic" is not "unexpected," *Garnot*, 239 Va. at 86, the trial court's conclusion below, that a car's "sudden slowing . . . without any brake lights," due to a collision resulting from a "sudden dog movement which is completely out of the blue" and "in the presence of unusually blinding headlights," could be. The trial court therefore correctly let the jury decide the question.

The trial court acknowledged that granting an instruction on the "sudden emergency" doctrine is "not a favored doctrine under Virginia law," but determined that this case constituted a

rare circumstance in which granting the instruction would be appropriate. Because there was more than a scintilla of evidence that would permit a jury to find that Sprouse was confronted with a sudden emergency not created by her own negligence and that Sprouse acted as an ordinarily prudent person would have acted under the same or similar circumstances, the trial court did not abuse its discretion by granting the "sudden emergency" jury instruction. *See Jones*, 263 Va. at 263.

## II. Boyette's Motion to Strike

### A. Standard of Review

"[A] motion to strike at the conclusion of the plaintiff's case-in-chief . . . tests whether his evidence is sufficient to prove it." *Tahboub v. Thiagarajah*, 298 Va. 366, 371 (2020) (citing Martin P. Burks, *Pleading and Practice* § 275, at 487 (4th ed. 1952)). Although a motion to strike the evidence is "[u]sually . . . made by the defendant," plaintiffs do have the same option. *Rountree v. Rountree*, 198 Va. 658, 663 (1957); *see also Gabbard v. Knight*, 202 Va. 40, 43 (1960). In either case, if there is sufficient evidence to support a jury verdict in favor of the non-moving party, striking the evidence is inappropriate. *Walton v. Walton*, 168 Va. 418, 422 (1937). The question for this Court on review is whether "upon careful consideration of all the evidence, . . . reasonable men may differ on the conclusion to be reached." *Id.* A trial court should not sustain a motion to strike "in any doubtful case." *Id.*; *see also Costner v. Lackey*, 223 Va. 377, 381 (1982) ("A motion to strike is in effect a motion for summary judgment which is not to be granted if any material fact is genuinely in dispute."); Code § 8.01-378 ("If the trial judge has granted a motion to strike the evidence of the plaintiff or the defendant, the judge shall enter summary judgment or partial summary judgment in conformity with his ruling on the motion to strike."). Granting a motion to strike "and thereby taking the case from the jury, is drastic and should not be done unless it is very plain that the court would be compelled to set

- 10 -

aside a verdict for [the non-moving party]." *Tahboub*, 298 Va. at 371 (quoting *Walton*, 168 Va. at 421-22).

When reviewing a trial court's decision on a motion to strike, we view the evidence "in the light most favorable to the non-moving party, and the non-moving party 'must be given the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom.'" *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021) (quoting *Egan v. Butler*, 290 Va. 62, 73 (2015)). "Any reasonable doubt as to the sufficiency of the evidence must be resolved in the [non-moving party]'s favor." *Tahboub*, 298 Va. at 371 (quoting *Artrip v. E.E. Berry Equip. Co.*, 240 Va. 354, 357 (1990)). "When evaluating a motion to strike, the [trial] court must not judge the weight or credibility of evidence, because to do so 'would invade the province of the jury.'" *Dill*, 300 Va. at 109 (quoting *Tahboub*, 298 Va. at 371).

"To establish actionable negligence, [Boyette] had the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293 (2003) (citing *Fox v. Custis*, 236 Va. 69, 73 (1988)). A defendant relying on the doctrine of "sudden emergency" may rebut the plaintiff's prima facie case by offering "a reasonable explanation, such an explanation as the jury could accept, showing that what happened was due to something other than the negligence of [the defendant]." *Vahdat*, 274 Va. at 422 (alteration in original) (quoting *Daniels v. C.I. Whitten Transfer Co.*, 196 Va. 537, 546 (1954)). Despite the defendant's obligation to provide such an explanation, however, "the ultimate burden remain[s] on the plaintiff to prove [his] case, that is, to show by a preponderance of the evidence that [his] injuries were caused by the negligence of the defendant[]." *Id.* (quoting *Daniels*, 196 Va. at 546).

B.  The trial court correctly denied Boyette's motion to strike Sprouse's evidence.

On review of the trial court's denial of Boyette's motion to strike, therefore, we ask whether, when viewing the evidence in the light most favorable to Sprouse and taking all reasonable inferences therefrom in Sprouse's favor, a jury reasonably could find that Sprouse was not negligent, or, if she was negligent, that her negligence did not proximately cause an injury to Boyette.  More specifically, because the jury in this case was appropriately instructed on the "sudden emergency" doctrine, we ask whether a jury reasonably could find that Sprouse, without negligence on her part, was confronted with a sudden emergency and acted as a reasonable person would have acted under the circumstances of this case.

For substantially the same reasons that it was appropriate for the trial court to grant the "sudden emergency" jury instruction, we conclude that a jury reasonably could find that Sprouse was confronted with a "sudden emergency" not created by her own negligence, and acted as an ordinarily prudent person would have acted under the same or similar circumstances.  Because reasonable jurors could disagree on these factual issues, and a trial court should deny a motion to strike "in any doubtful case," the trial court here correctly denied Boyette's motion and submitted the matter to the jury.  *Walton*, 168 Va. at 422.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.